UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

In the Matter of the Extradition of      :
                                         :      Mag. No. 20-15012 (ESK)
Parthasarathi Kapoor                     :

## MEMORANDUM OF EXTRADITION LAW

### I.   Background

On February 5, 2003, United States Magistrate Judge Alan Kay of the United States District Court for the District of Columbia issued a warrant for the provisional arrest of fugitive Parthasarathi[1] Kapoor ("Kapoor" or the "fugitive") pursuant to a request from the government of Government of Canada ("Canada") under the authority of its extradition treaty with the United States[2] and 18 U.S.C. §§ 3184[3] *et seq.*  On January 20, 2020, U.S. law enforcement arrested Kapoor on this warrant in this District. Kapoor made an initial court appearance on the next day, January 21, 2020, at which time he was ordered detained by United States Magistrate Judge Edward S. Kiel of the United States District Court for the District of New Jersey. Kapoor is currently in the custody of the United States Marshals Service ("USMS").

---

[1] The spelling of Parthasarthi was incorrect on the 2003 warrant and was listed as Parthasarthie.

[2] Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983 (the "1971 Treaty"), *as amended by* the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990) (the "1998 Protocol") and the Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (the "2001 Protocol"; collectively, the "Treaty").  Copies of Canada's extradition request and the Treaty are included in **Exhibits 1** and **2** hereto, respectively.

[3] The 2003 warrant also had a typographical error on the Section of Title 18, listing 3187 instead of 3184.

The United States seeks Kapoor's extradition in accordance with its Treaty obligations to Canada. Title 18, United States Code, Section 3184, requires the judicial officer handling the extradition to hold a hearing to consider the evidence of criminality that Canada has presented and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. If the judicial officer finds the fugitive extraditable, s/he certifies that conclusion to the Secretary of State, who decides whether to surrender the fugitive. Because the law regarding extradition is *sui generis*, differing substantially from ordinary criminal or civil proceedings, the United States offers this memorandum as a guide to the nature of the extradition hearing and the Treaty's application to the facts of this case. As detailed here, the evidence Canada has submitted fulfills the relevant Treaty requirements. The Court should therefore "certify the same" to the Secretary of State, who will then decide whether to surrender the fugitive "according to the treaty." *Id.*[4]

## II.    Statement of Facts[5]

According to the evidence Canada has submitted, Kapoor committed the offenses of (1) sexual interference, contrary to Section 151 of the Canadian

---

[4] After the Court completes its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender." *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993). "The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual [fugitive] as well as foreign relations, which the extradition magistrate may not." *Id.*

[5] The facts in this matter, as certified by the Director of Criminal and Penal Prosecutions of Quebec, can be found in Exhibit 1 in KAPOOR Request at 27 – 37.

Criminal Code ("CCC") (Counts 1, 3, 11, and 15); (2) invitation to sexual touching, contrary to CCC Section 152 (Counts 4 and 16); (3) sexual assault, contrary to CCC Sections 265(1) and 271(1)(a) (Counts 2, 6, 12, and 17); (4) sexual exploitation, contrary to CCC Section 153(1)(b) (Count 5); (5) assault, contrary to CCC Section 266(a) (Count 7); (6) obtaining, for consideration, sexual service of a person under 18 years old, contrary to CCC Section 212(4) (Count 8); (7) making child pornography, contrary to CCC Section 163.1(2)(a) (Count 9); and (8) possession of child pornography, contrary to CCC Section 163.1(4)(a) (Count 10).[6] As discussed herein, the alleged criminal conduct corresponds to crimes under United States and New Jersey law.  On January 31, 2003, Justice Jean-Georges Laliberte of the Province of Quebec, Canada, issued a warrant for Kapoor's arrest.  Knowing that he was under investigation, Kapoor fled Canada in early 2003. The submissions from Canada reflect the following:

Between June 1, 1998, and January 4, 2003, Kapoor sexually assaulted four boys, who were between the ages of 5 and 15 years (the "victims" or "victim-1, victim-2, victim-3, and victim-4"), and whom he knew through the neighborhood where he resided, in Montreal, Canada. During this time, Kapoor was approximately 24-29 years old.  Kapoor befriended the victims and invited them to his residence in Montreal, under the pretext of playing video or computer games.  Kapoor showed the victims pornographic images, either on the internet

---

[6] The Canadian prosecutor's Affidavit of Law in support of extradition indicates that Canada is not pursuing extradition for the warrant's Counts 13–14, which reference a fifth alleged victim.

or from his personal collection, and then engaged in various sexual acts with them, including sexual touching, masturbation, oral sex, and/or sodomy. Additionally, Kapoor frequently filmed his encounters with at least one victim.

The victims spoke with Canadian police about their experiences with Kapoor.  In the summer of 1998, victim-1, victim-2 and vicitim-3 each came to meet Kapoor on the street where they resided in Montreal.  Victim-1, who was eleven years old, went over to Kapoor's apartment on this street, where he played video games and began a relationship with Kapoor, to be discussed shortly. In July 1998, victim-2, who was eight years old, went to Kapoor's apartment to play video games on several occasions. On one of these occasions, while wrestling with victim-2, Kapoor tried to kiss victim-2 on the mouth.  Shortly thereafter, Kapoor followed victim-2 into the bathroom at Kapoor's apartment, locked the door, pulled down victim-2's pants, and touched victim-2's genitals.  Also during the summer of 1998, victim-3, who was five years old, went to Kapoor's apartment and played video games there; Kapoor touched victim-3's buttocks and genitals over his clothes.

Beginning in July 1999, victim-1 visited Kapoor's residence on a daily basis instead of attending school.  At the apartment, Kapoor showed him pornography and sexually assaulted him – for example, telling victim-1 to masturbate in front of him and forcing victim-1 to perform oral sex on him. Kapoor filmed all of these incidents, unbeknownst to victim-1 at first, and then forced victim-1 to view the recordings.  On several occasions, when victim-1 tried

to refuse to visit Kapoor's residence, Kapoor threatened to show footage of the sexual assault(s) to victim-1's parents and others if he did not continue to visit and engage in sex acts with Kapoor.  When victim-1 cried, Kapoor slapped him and continued threatening him.  Kapoor continued his routine sexual assaults on victim-1 through approximately August 2001, when Kapoor visited the United States.  While Kapoor was abroad, victim-1 and a male friend took several VHS cassette tapes and a computer from Kapoor's residence.  (Victim-1 later provided the tapes to the police.)

Between March and April 2002, Kapoor arranged a meeting with victim-1 in an attempt to reclaim the tapes that victim-1 had taken from Kapoor's apartment.  When victim-1 refused, Kapoor slapped victim-1 and punched him in the face, in the presence of victim-1's aforementioned friend.  One of these tapes shows victim-1 masturbating.  While filming, Kapoor presented victim-1's identification cards (student, health insurance, and supermarket identifications) to the camera.  Victim-1 told police that Kapoor sexually assaulted him each time he went to Kapoor's residence – forcing oral sex, masturbation, and/or anal penetration – and that Kapoor filmed the assaults.   Additionally, to facilitate further sexual contact and compliance, Kapoor gave victim-1 money, food, clothing, shoes, and other gifts (pens, a Walkman, video games, a gym subscription, and a cell phone), helped him obtain credit cards, and told victim-1 that he wanted to take him away from his family to the United States.

In December 2002, Victim-2 was found with a pellet gun while at school

and disclosed that the reason he possessed the pellet gun was to scare a neighbor named Kapoor, who had sexually assaulted him, as described above.  Victim-2 also stated that his cousin, victim-1, told him Kapoor was dangerous.  Victim-2 (and Victim-3) recalled Kapoor's surname and address.

In December 2002, victim-4, who was approximately seven years old, was visiting his grandmother, who was friends with Kapoor.  While victim-4 was alone with Kapoor in victim-4's grandmother's bedroom, Kapoor showed him pornographic images.  Kapoor also touched victim-4's penis over his clothes and placed victim-4's hand on Kapoor's penis.  On another occasion between December 1, 2002, and January 4, 2003, when victim-4 was alone with Kapoor in Kapoor's bedroom, Kapoor showed victim-4 pornographic images and placed victim-4's hand on Kapoor's penis, over his clothing.  Victim-4 reported this incident to victim-4's father and his father's spouse, who filed a police complaint.  Victim-4 identified a photograph of Kapoor as depicting the person who touched victim-4's genitals and asked victim-4 to touch Kapoor's genitals.

In approximately January 2003, police in Canada began investigating Kapoor for sexual assault.  Police found pornographic images on a computer in victim-4's grandmother's bedroom, and obtained a camcorder and VHS cassette tapes were found at Kapoor's residence.  Police obtained 8 VHS cassette tapes from Kapoor's roommate, which Kapoor had left in the roommate's possession prior to fleeing to the United States.  These tapes show victim-1 engaged in masturbation, oral sex, sodomy, and other sexual acts with Kapoor.  The dates

on the videos indicate that in at least one of them, victim-1 was younger than fourteen.

In January 2003, the victims all gave statements to police regarding the sexual and physical assaults they experienced at the hands of Kapoor.

**Legal Framework and Argument**

**A.      General Principles of International Extradition**

The extradition process is *sui generis*, meaning it is neither a criminal nor a civil proceeding. Accordingly, we have outlined the United States' extradition scheme below, and have detailed the Court's circumscribed role in the extradition process.

Extradition is primarily an executive function with a specially defined role for a judicial officer, who is authorized by statute to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge." 18 U.S.C. §§ 3184; 3186; *Martin*, 993 F.2d at 828; *Lo Duca v. United States*, 93 F.3d 1100, 1110 n.10 (2d Cir. 1996). The Secretary of State, and not the court, makes the ultimate decision whether a fugitive should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980) ("The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct its foreign affairs."). The extradition judge is assigned the limited duty of determining the request's sufficiency under the applicable treaty provisions. *Martin*, 993 F.2d at 828–29. That judicial function is carried out by

conducting a hearing pursuant to 18 U.S.C. § 3184. "This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

At the extradition hearing, the court should consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification—as defined in the Treaty, statutes, and case law— have been established. *See Quinn v. Robinson*, 783 F.2d 776, 786 n.3 (9th Cir. 1986) (citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)); *In re Extradition of Garcia*, 825 F. Supp. 2d 810, 815 (S.D. Tex. 2011). If the fugitive offers any explanatory evidence, the court should rule on its admissibility. Once the evidentiary record is complete, the court should make written findings of fact and conclusions of law as to each of the elements for certification, including separate findings for each offense as to which extradition is sought. *Shapiro v. Ferrandina*, 478 F.2d 894, 905–06 (2d Cir. 1973), *cert. dismissed*, 414 U.S. 884 (1973). If the court finds that the requirements for certification have been met, the court must furnish the certification to the Secretary of State, together with a copy of the evidence and a transcript of any testimony presented at the hearing, and must commit the fugitive to the custody of the United States Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184;

8

*see Sidali v. I.N.S.*, 107 F.3d 191, 195 (3d Cir. 1997); *Ordinola v. Hackman*, 478 F.3d 588, 597 (4th Cir.), *cert. denied*, 128 S. Ct. 373 (2007).

In fulfilling its function under Section 3184, the judicial officer should construe liberally the applicable extradition treaty in order to effect its purpose, namely, the surrender of fugitives to the requesting country. *See Factor v. Laubenheimer*, 290 U.S. 276, 303 (1933) ("Extradition treaties are to be liberally, not strictly, construed."); *In re Extradition of Aquino*, 697 F. Supp. 2d 586, 590 (D.N.J. 2010) ("In construing such treaties, form is not to be insisted upon beyond the requirements of safety and justice.") (citations omitted); *McElvy v. Civiletti*, 523 F. Supp. 42, 47 (S.D. Fla. 1981); *In re Extradition of Nezirovic*, No. CIV.A. 7:12MC39, 2013 WL 5202420, at *5 (W.D. Va. Sept. 16, 2013) ("Treaties are construed liberally to favor the obligation to surrender fugitives.") (citation omitted). As the Supreme Court explained in *Factor*:

> In choosing between conflicting interpretations of a treaty obligation, a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them.

290 U.S. at 293. To carry out a treaty obligation, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure." *Id.* at 298. This country does not expect foreign governments to be versed in our criminal laws and procedures. *Grin v. Shine*, 187 U.S. 181, 184

9

(1902). Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).

A court should afford great weight to statements by the U.S. Department of State regarding treaty interpretation. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 168 (1999); *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 184–85 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight."); *Ahmad v. Wigen*, 726 F. Supp. 389, 402 (E.D.N.Y. 1989), *aff'd*, 910 F.2d 1063 (2d Cir. 1990) ("The State Department's view deserves deference, unless it represents a substantial departure from national or international norms.").

Similarly, a U.S. extradition court "is not entitled to second guess [the requesting country]'s compliance with its own laws." *Jean v. Mattos*, No. CIV. 13-5346 KSH, 2014 WL 885058, at *4 (D.N.J. Mar. 5, 2014) (citation omitted).

### B.   The Requirements for Certification Are Satisfied

An extradition certification is in order where: (1) The judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which extradition is requested are covered by the applicable treaty; and (5) sufficient evidence exists to support a finding of probable cause as to each charge for which extradition is sought. 18 U.S.C. § 3184; *see Fernandez*, 268 U.S. at 312; *Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006); *Sidali*, 107 F.3d at 195.

10

## 1.  The Court Has Authority Over the Proceedings

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." 18 U.S.C. § 3184. As such, the judicial officer conducting the extradition hearing that Section 3184 prescribes does not exercise "any part of the judicial power of the United States" but, rather, acts in a "non-institutional capacity by virtue of a special authority." *In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993) (internal quotation marks and citations omitted). Both magistrate judges and district judges may render a certification under Section 3184. *See* Local Cr. R. 5.1(k) (expressly authorizing magistrate judges to conduct extradition proceedings in accordance with 18 U.S.C. § 3184).

## 2.  The Court Has Jurisdiction Over Kapoor

A court has jurisdiction over a fugitive found within its jurisdictional boundaries. 18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person found within his jurisdiction . . . issue his warrant for the apprehension of the person so charged."); *see Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *In re Pazienza*, 619 F. Supp. 611, 616 (S.D.N.Y. 1985). Because Kapoor was found in this District when he was arrested at Newark Liberty International Airport on the aforementioned extradition warrant, the personal jurisdictional requirement of 18 U.S.C. § 3184 is met.

11

### 3.  The Relevant Treaty Is In Full Force and Effect

The extradition statute, 18 U.S.C. § 3184, provides for extradition where a treaty or convention is in force between the requesting state and the United States. *See, e.g.*, *Hoxha*, 465 F.3d at 562; *United States ex rel Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997).

Here, the government has provided a declaration from Katherine C. Fennell, an Attorney-Adviser in the Office of the Legal Adviser for the Department of State, attesting that the Treaty is in full force and effect (the "Fennell Declaration"), which is attached hereto as Exhibit 2. The Department of State's determination is entitled to deference from the Court. *See Charlton*, 229 U.S. at 468; *Terlinden v. Ames*, 184 U.S. 270, 288 (1902); *Kastnerova v. United States*, 365 F.3d 980, 985–87 (11th Cir. 2004), *cert. denied*, 541 U.S. 1090 (2004); *Garcia*, 109 F.3d at 171; *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996).

### 4.  The Treaty Covers the Crimes for Which Canada Seeks Extradition

Extradition treaties create an obligation for the United States to surrender fugitives under particular circumstances. Here, the Treaty provides for the extradition of persons "who have been charged with, or convicted of, any of the offenses covered by Article 2" of the Treaty. Treaty Art. I.

Further, the Treaty provides that "Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment."  *Id.* Art. II(1). The Treaty also provides that an offense "is

12

extraditable notwithstanding" (i) "that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States," or (ii) "that it relates to taxation or revenue or is one of a purely fiscal character." *Id.* Art. II(2).

Consequently, the Court should examine the description of criminal conduct that Canada has provided in support of the charges and decide whether that conduct would have been criminal under U.S. law if committed in this country. Dual criminality exists if the conduct involved in the foreign offense would be criminal under either U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states. *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107-08 (9th Cir. 1981); *In re Extradition of Manzi*, 888 F.2d 204, 207 (1st Cir. 1989); *Quintanilla v. United States*, 582 F. App'x 412, 414 (5th Cir. 2014).

Because extradition treaties should be "interpreted with a view to fulfil our just obligations to other powers[,]" *Grin*, 187 U.S. at 184; *see Factor*, 290 U.S. at 303, a court should "approach challenges to extradition with a view toward finding the offense within the treaty," *McElvy*, 523 F. Supp. at 48; *see also Martinez v. United States*, 828 F.3d 451, 463 (6th Cir.) (*en banc*) ("The point of an extradition treaty after all is to facilitate extradition . . . ."), *cert. denied*, 137 S. Ct. 243 (2016).

The Canadian offenses need not be identical to ours.  In *Collins v. Loisel*,

the Supreme Court held that dual criminality exists "if the particular act charged is criminal in both jurisdictions," even if the name of the offense or the scope of the liability differs in the two countries. 259 U.S. 309, 312 (1922); *see United States v. Riviere*, 924 F.2d 1289, 1302 (3d Cir. 1991) ("[T]he rule of double criminality does not require that the elements, purposes, or punishment for foreign offenses be identical to ours.").

Dual criminality exists in this case. Canada has provided the affidavit of prosecutor Marie-Josee Harvey, which explains each of the relevant Canadian laws as applicable to Kapoor's conduct. The Canadian offense of sexual interference entails, for a sexual purpose, touching, directly or indirectly, with a part of the body or with an object, any part of the body of a person under the age of fourteen years, and carries a potential penalty of ten years imprisonment. The Canadian offense of invitation to sexual touching entails, for a sexual purpose, inviting, counseling, or inciting a person under the age of fourteen to touch, directly or indirectly, with a part of the body or with an object, the body of any person (including the body of the person who so invites, counsels, or incites or the body of the person under the age of fourteen), and carries a potential penalty of ten years imprisonment. The Canadian offense of sexual assault entails touching of a sexual nature and the absence of consent, and carries a potential penalty of ten years imprisonment. The Canadian offense of sexual exploitation entails being in a position of trust or authority toward a young person (*i.e.*, a person fourteen or older, but under eighteen), or being a person with whom the

14

young person is in a relationship of dependency, and, for a sexual purpose, touching, directly or indirectly, with a part of the body or with an object, any part of the body of the young person, or inviting, counseling, or inciting a young person to touch, directly or indirectly, with a part of the body or with an object, the body of any person (including the body of the person who so invites, counsels or incites or the body of the young person); this offense carries a potential penalty of five years imprisonment. The Canadian offense of assault entails, without the consent of another, applying force intentionally to a person, directly or indirectly, or attempting or threatening, by an act or gesture, to apply force to a person, if one has, or causes the person to believe on reasonable grounds that one has, present ability to effect one's purpose; the offense carries a potential penalty of five years imprisonment. The Canadian offense of obtaining sexual service of a person under eighteen years old entails obtaining for consideration, or communicating with anyone for the purpose of obtaining for consideration, the sexual services of a person who is under the age of eighteen, and carries a potential penalty of ten years imprisonment. The Canadian offenses of possessing and making child pornography carry potential penalties of five and ten years imprisonment, respectively. *See* Exhibit 1 at EX-KAPOOR Request at 8-19.

Kapoor's conduct underlying the alleged Canadian crimes, had he committed the activity in the United States, would be subject to prosecution under laws including 18 U.S.C. § 2241(c) (aggravated sexual abuse with children,

15

punishable by life imprisonment);[7] 18 U.S.C. § 2242 (sexual abuse, punishable with life imprisonment);[8] 18 U.S.C. § 2243(a) (sexual abuse of a minor, punishable by 15 years imprisonment);[9] 18 U.S.C. § 2244(a) (abusive sexual contact, punishable by two years imprisonment);[10] 18 U.S.C. § 2422(b) (persuading, inducing, or enticing a minor younger than eighteen to engage in sexual activity for which any person can be charged with a criminal offense, punishable by ten years imprisonment); 18 U.S.C. § 113(a)(1)–(2) (assault with intent to commit a felony, *e.g.*, a violation of section 2241 or 2242, punishable by 20 years imprisonment, or possession/production of child pornography, punishable by 10 years imprisonment); 18 U.S.C. § 2251 (employing, using,

---

[7] 18 U.S.C. § 2241(c) prohibits, in relevant part, anyone in the special maritime and territorial jurisdiction of the United States from knowingly engaging, or attempting to engage, in a sexual act (which 18 U.S.C. § 2246(1) defines) with a child who has attained the age of 12 but has not attained the age of 16 (and is at least 4 years younger than the perpetrator), under the circumstances subsection (a) describes – *e.g.*, knowingly causing, or attempting to cause, another person to engage in a sexual act by using force.

[8] 18 U.S.C. § 2242 prohibits anyone in the special maritime and territorial jurisdiction of the United States from knowingly (1) causing, or attempting to cause, another to engage in a sexual act by threatening or placing that person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping); or (2) engaging, or attempting to engage, in a sexual act with a person who is (a) incapable of appraising the nature of the conduct; or (b) physically incapable of declining participation in, or communicating unwillingness to engage in, the sexual act.

[9] 18 U.S.C. § 2243(a) prohibits, in relevant part, anyone in the special maritime and territorial jurisdiction of the United States from knowingly engaging, or attempting to engage, in a sexual act with a person who has attained the age of 12 but has not attained the age of 16 and is at least four years younger than the perpetrator.

[10] 18 U.S.C. § 2244(a) prohibits, in relevant part, that anyone who, in the special maritime and territorial jurisdiction of the United States from knowingly engaging in or causing sexual contact with or by another person, if doing so would violate 18 U.S.C. § 2243(a) had the sexual contact been a sexual act.  18 U.S.C. § 2246(3) defines sexual contact as "the intentional touching, either –any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct, for the purpose of producing child pornography, or attempting to do so, punishable by 30 years imprisonment);18 U.S.C. § 2252A(a)(6) (possessing child pornography, punishable with ten years imprisonment); N.J. Stat. § 2C:14-2 (sexual assault, punishable by ten years imprisonment pursuant to N.J. Stat. § 2C:43-6(a)(2));[11] and/or N.J. Stat. § 2C:24-4 (endangering welfare of children).[12] Accordingly, the Treaty covers the offenses for which Canada seeks to extradite Kapoor.

### 5. Probable Cause Exists to Believe that Kapoor Committed the Offenses

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to 18 U.S.C. § 3184 is the familiar domestic requirement of probable cause.  The court must conclude that probable cause exists to believe that the crimes Canada alleges were committed, and that the person before the Court committed them.  *See Hoxha*, 465 F.3d at 561; *Sidali*, 107 F.3d at 199 ("[T]he probable cause standard applicable in extradition proceedings is identical to that used by courts in federal preliminary hearings."). "Section 3184 requires

---

[11] N.J. Stat. § 2C:14-2(c) provides, as relevant here, that an actor is guilty of sexual assault if he commits an act of sexual penetration with another person; and "(1) The actor uses physical force or coercion, but the victim does not sustain severe personal injury"; or "(4) The victim is at least 13 but less than 16 years old and the actor is at least four years older than the victim."  Sexual assault is a crime of the second degree.

[12] N.J. Stat. § 2C:24-4(b)(3) provides, as relevant here, that a person commits a crime of the first degree if he causes or permits a child to engage in a prohibited sexual act or in the simulation of such an act if the person knows, has reason to know or intends that the prohibited act may be photographed, filmed, reproduced, or reconstructed in any manner, including on the Internet, or may be part of an exhibition or performance.

the extradition court to conduct essentially the same preliminary inquiry typically required for issuance of a search warrant or an arrest warrant." *Haxhiaj v. Hackman*, 528 F.3d 282, 287 (4th Cir. 2008). "This is a relatively modest standard that requires the Court consider 'the totality of the circumstances' involved." *In re Extradition of Jean*, No. MAG. 13-3588 (MF), 2013 WL 4502102, at *3 (D.N.J. Aug. 22, 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The evidence is sufficient, and probable cause exists, if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). "[T]he foreign government is not required to present its entire case in this country. The evidence presented need only support a reasonable belief'" that the fugitive committed the offense. *Jean*, 2013 WL 4502102, at *4 (quoting *Austin v. Healey*, 5 F.3d 589, 605 (2d Cir.1993), *cert. denied*, 510 U.S. 1165 (1994)). The Supreme Court stated in *Benson v. McMahon* that:

> [T]he proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

127 U.S. 457, 463 (1888); *see also Fernandez*, 268 U.S. at 312 ("Competent evidence to establish reasonable grounds is not necessarily evidence competent

18

to convict."); *Collins*, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *accord Ordinola*, 478 F.3d at 608 ("It is fundamental that the person whose extradition is sought is not entitled to a full trial at the magistrate's probable cause hearing . . . . That is the task of the . . . courts of the other country.").

In February 2020, a court in this District examined a case in which Poland sought to extradite a fugitive for the crime of rape. *See In re Extradition of Czerech*, Mag. No. 19-6763, 2020 WL 603998, (D.N.J. Feb. 6, 2020), attached hereto as **Exhibit 3**. Magistrate Judge Falk, citing *Collins*, emphasized that "this Court's function is only to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." *Id.*, at *5. The requesting country is "not required to present its entire case in this country, nor is it appropriate for this Court to assess whether the evidence presented is sufficient to justify a conviction." *Id.* The court found that, considering the totality of the circumstances and the unique rules of wide latitude that govern the receipt of evidence in extradition hearings, the government had established probable cause to sustain the charge; as a result, the court certified extradition for the Secretary of State's further consideration. *See id.* at *5–6.

In this case, the extradition request from Canada establishes probable

19

cause to believe that Kapoor committed the crimes that Canada alleges. The extradition request includes a certified statement from Senior Counsel Cathy Chalifour, at the International Assistance Group of the Department of Justice of Canada, which includes the Canadian prosecutor's Affidavit of Law and Sergeant Detective Pascal Fortier's Affidavit of Facts. The latter, as discussed above, cites evidence against Kapoor, including statements from the victims, their relatives, and victim-1's friend; and the aforementioned photographic and video evidence. Accordingly, the extradition request satisfies the probable cause requirement.

## C.    Extradition Is Sui Generis and Follows Unique Procedures

### 1.    An Extradition Hearing Is Not a Criminal Proceeding

As stated above, an extradition hearing is not a criminal proceeding. Its purpose is to decide the sufficiency of the charge under the treaty, not to determine the guilt or innocence of the accused; that is for the foreign court. *See, e.g., Collins,* 259 U.S. at 316; *Neely v. Henkel,* 180 U.S. 109, 123 (1901); *Benson,* 127 U.S. at 463. Because of the limited nature of the hearing, special procedural and evidentiary rules apply.

For example, the rights available to a defendant in a criminal trial do not attach to a fugitive in international extradition proceedings. *See Neely,* 180 U.S. at 122 (rights available to one charged with criminal offense in this country not applicable to offenses committed outside the United States against the laws of another country); *accord Charlton,* 229 U.S. at 461; *Martin,* 993 F.2d at 829. The purpose of an extradition hearing is not to try the underlying charge; that is for

20

the foreign court. *Neely*, 180 U.S. at 123.

Accordingly, neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to extradition proceedings.  *See* Fed. R. Crim. P. 1(a)(5)(A) ("Proceedings not governed by these rules include . . . the extradition and rendition of a fugitive."); Fed. R. Evid. 1101(d)(3) ("These rules – except for those on privilege – do not apply to . . . miscellaneous proceedings such as extradition or rendition."); *Balzan v. United States*, 702 F.3d 220, 224 (5th Cir. 2012). Moreover, the fugitive has no right to discovery.  *See Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005), *cert. denied*, 546 U.S. 1171 (2006); *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984). The fugitive's right to present evidence is severely constrained, and his Constitutional rights are limited.  For example, the fugitive has no right to cross-examine witnesses who might testify at the hearing or confront his accusers, *see Bingham v. Bradley*, 241 U.S. 511, 517 (1916); *Ordinola*, 478 F.3d at 608; and no Sixth Amendment right to a speedy extradition, *see McDonald v. Burrows*, 731 F.2d 294, 297 (5th Cir. 1984); *Martin*, 993 F.2d at 829; *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978).  The exclusionary rule is inapplicable, *see Simmons v. Braun*, 627 F.2d 635, 636–37 (2d Cir. 1980); and the Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings, *see Collins v. Loisel*, 262 U.S. 426, 429 (1923); *In re Extradition of McMullen*, 989 F.2d 603, 612–13 (2d Cir. 1993), *cert. denied*, 510 U.S. 913 (1993).

### 2. Extradition Hearings Rely on Written Submissions and Do Not Require Live Witnesses

A certification of extradition may be, and typically is, based entirely on the authenticated documentary evidence and information that the government seeking extradition has provided. *See, e.g.*, *Bovio v. United States*, 989 F.2d 255, 259–61 (7th Cir. 1993) (finding Swedish investigator's statement sufficient to establish probable cause); *O'Brien v. Rozman*, 554 F.2d 780, 783 (6th Cir. 1977); *Shapiro*, 478 F.2d at 902-03; *In re Extradition of Mainero*, 990 F. Supp. 1208, 1212–13 (S.D. Cal. 1997) (finding statements of co-conspirators and other witnesses sufficient in extradition to Mexico); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433-1434 (S.D. Fla. 1993) (finding documents and statements sufficient for extradition to Honduras), *aff'd*, 28 F.3d 116 (11th Cir. 1994). The finding also may rest upon written statements from a foreign prosecutor or judge summarizing the evidence. *Rice v. Ames*, 180 U.S. 371, 375–76 (1901); *Jean*, 2014 WL 885058, at *5 ("That some evidence is 'alluded to' rather than 'reproduced" – for example, the police reports from which witness statements were presumably extracted are not in the record – does not diminish the validity of what is satisfactorily described."); *accord Glucksman v. Henkel*, 221 U.S. 508, 513–14 (1911); *Garcia*, 825 F. Supp. 2d at 830 ("[E]xtradition can be predicated entirely on the 'unsworn statements of absent witnesses.'") (quoting *Collins*, 259 U.S. at 317).

Extradition treaties do not require, or even anticipate, live witness testimony at the hearing. *See Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir.

1986). Requiring the "demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty." *Bingham*, 241 U.S. at 517.

Hearsay evidence is admissible at an extradition hearing and may fully support the court's findings leading to a certification under Section 3184. *See Collins*, 259 U.S. at 317; *Hoxha*, 465 F.3d at 561; *Haxhiaj*, 528 F.3d at 292 ("[C]ourts have consistently concluded that hearsay is an acceptable basis for a probable cause determination in the extradition context. Unsworn statements can be sufficient to support a probable cause determination.") (citations omitted); *O'Brien v. Rozman*, 554 F.2d 780, 783 (6th Cir. 1977) (citing cases).

The material in Canada's extradition submissions should be taken as true. *See, e.g., In re Solis*, 402 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005); *In re Lukes*, No. 2:02-MC-23-FTM, 2003 WL 23892681, at *4 n.6 (M.D. Fla. May 8, 2003); *In re Extradition of Cheung*, 968 F. Supp. 791, 794 n.6 (D. Conn. 1997) (stating that the court "'must accept as true all of the statements and offers of proof by the demanding state,' even if they contain hearsay.") (quoting *In re Extradition of Marzook*, 924 F. Supp. 565, 592 (2d Cir. 1996) (alteration omitted)); *Desautels v. United States*, 782 F. Supp. 942, 944 n.2 (D. Vt. 1991); *Ahmad*, 726 F. Supp. at 399–400; *In re Extradition of Atta*, 706 F. Supp. 1032, 1050–51 (E.D.N.Y. 1989) ("The primary source of evidence for the probable cause determination is the extradition request, and any evidence submitted in it is deemed truthful for the purposes of this determination.") (citing *Collins*, 259 U.S. at 315-16). Credibility

determinations are reserved for the foreign court.  *See Santos v. Thomas*, 830 F.3d 1002-03 (9th Cir. 2016) (*en banc*) (defense evidence that poses a "conflict of credibility" is inadmissible contradictory evidence); *Bovio*, 989 F.2d at 259; *In re Extradition of Singh*, 124 F.R.D. 571, 573 (D.N.J. 1987).

Section 3184 of Title 18, along with the Treaty, governs the nature and admissibility of evidence at an extradition hearing. In this matter, Article 9 of the Treaty lists the submissions that the state seeking extradition must make in support of its request.  Article 10 of the Treaty also provides that "documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when: (a) in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada."  Treaty Art. 10; *see also* Title 18, United States Code, Section 3190 ("Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.").  Here, as the Fennell

24

Declaration states, the documents that Canada has submitted satisfy these admissibility requirements. (*See* Fennell Decl. ¶ 6.)

### 3. The Fugitive's Opportunity to Challenge the Evidence Is Very Limited

Due to the nature and limited purpose of an extradition hearing under 18 U.S.C. § 3184 and the importance of the United States' fulfilling its obligations under an extradition treaty, a fugitive's opportunity to challenge the evidence introduced against him is very circumscribed. A fugitive may not introduce evidence that contradicts the evidence the government submits on behalf of the requesting country, but may only introduce evidence explaining the submitted evidence. *See Charlton*, 229 U.S. at 457–58; *Hoxha*, 465 F.3d at 561 ("Courts have traditionally distinguished between inadmissible 'contradictory evidence,' which merely conflicts with the government's evidence, and admissible 'explanatory evidence,' which entirely eliminates probable cause."). *Ordinola*, 478 F.3d at 608.[13] A contrary rule might compel the "demanding government to produce all its evidence . . . both directing and rebutting, in order to meet the defense thus gathered from every quarter." The Supreme Court in *Collins* quoted with approval a district court's reasoning as to why the scope of an extradition hearing is very limited:

> If this were recognized as the legal right of the accused
> in extradition proceedings, it would give him the option

---

[13] The extent to which a fugitive may offer explanatory proof is largely within the court's discretion. *See Koskotas*, 931 F.2d at 175 (1st Cir. 1991); *Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir.), *cert. denied*, 439 U.S. 932 (1978); *Singh*, 124 F.R.D. at 572–73 (citing cases); *United States ex rel Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963), *cert. denied*, 376 U.S. 952 (1964) (citing cases).

of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter.   The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here.   This would be in plain contravention of the intent and meaning of the extradition treaties.

*Collins*, 259 U.S. 309 at 316 (quoting *In re Extradition of Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)); *accord Charlton*, 229 U.S. at 461; Singh, 124 F.R.D. at 579 (stating that extradition proceedings should not be a "dress rehearsal trial").

Courts routinely reject technical and affirmative defenses in extradition proceedings. *See Bingham*, 241 U.S. at 517 (rejecting objections that "savor of technicality"); *Charlton*, 229 U.S. at 462; *Collins*, 259 U.S. at 316–17; *Hooker*, 573 F.2d at 1368; *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997), *cert. denied*, 525 U.S. 810 (1998). A fugitive may not introduce evidence that (1) merely conflicts with the evidence the requesting state has submitted, *see Collins*, 259 U.S. at 315-317; *Hoxha*, 465 F.3d at 561; (2) attempts to establish an alibi, *Shapiro*, 478 F.2d at 901; (3) suggests an insanity defense, *see Charlton*, 229 U.S. at 462; or (4) seeks to impeach the credibility of the requesting country's witnesses, *see Bovio*, 989 F.2d at 259; *Singh*, 124 F.R.D. at 573 ("*While the accused may produce evidence to explain matters, the court may exclude evidence*

26

*which merely contradicts government testimony, poses conflicts of credibility or establishes a defense.")* (emphasis in original, citations omitted). Such matters, which require factual and credibility determinations, are for a Canadian court to resolve at a trial. *See Soares v. Hendricks*, No. CIV.A. 11-7134 (JLL), 2012 WL 161747, at *3 (D.N.J. Jan. 19, 2012) ("[R]eviewing the entirety of the evidence is a task reserved to the [requesting country's] Courts.").

### 4. The Executive Branch Considers Matters Other Than Sufficiency; Rule of Non-Inquiry

Other than the sufficiency of the evidence, all matters that a fugitive may raise as defenses to extradition are to be considered by the Secretary of State, not by the court. *See* 18 U.S.C. §§ 3184, 3186. In making extradition determinations, "[t]he Secretary exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations—factors that may be beyond the scope of the magistrate judge's review." *Sidali*, 107 F.3d at 195 n.7. The Secretary takes into account humanitarian claims and applicable statutes, treaties, or policies regarding appropriate treatment in the requesting country. *See Escobedo*, 623 F.2d at 1105. This is consistent with the long-held understanding that deciding whether to surrender a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State" within the executive's powers to conduct foreign affairs. *In re Kaine*, 55 U.S. 103, 110 (1852).

Similarly, a fugitive's contention that the extradition request is politically motivated or that the requesting state's justice system is unfair should be

27

addressed by the Secretary of State, not the court. *See Koskotas*, 931 F.2d at 173–74 (noting that requesting state's motives are for executive branch to consider); *Kin-Hong*, 110 F.3d at 110 ("It is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed"); *see also Prasoprat*, 421 F.3d at 1016; *Blaxland v. Commonwealth Director*, 323 F.3d 1198, 1208 (9th Cir. 2003); *In re Extradition of Singh*, 123 F.R.D. 127, 130 (D.N.J. 1987).

## III.   CONCLUSION

For the foregoing reasons, the government respectfully requests the certification of Kapoor's extraditability to Canada for the offenses of sexual interference, invitation to sexual touching, sexual assault, sexual exploitation, assault, obtaining sexual service of a person under 18 years old, making child pornography, and possession of child pornography.

Dated: April 20, 2020                    Respectfully submitted,

                                         CRAIG CARPENITO
                                         United States Attorney


                                    BY: _____
                                         KENDALL RANDOLPH
                                         Special Assistant U.S. Attorney

28