

Embassy of the United States of America

## Certificate to be attached to Documentary Evidence Accompanying Requisitions in the United States for Extradition

### AMERICAN FOREIGN SERVICE

Ottawa, Canada, March 13, 2020

Richard M. Mills Jr., Chargé d'Affaires of the United States of America at Ottawa, Canada, hereby certify that the annexed papers, being authenticated supporting documents proposed to be used upon an application for the extradition from the United States of Parthasarathi KAPOOR who stands charged in the Province of Quebec with four counts of sexual interference, contrary to section 151 of the Criminal Code; four counts of sexual assault, contrary to sections 266 and 271(1)(a) of the Criminal Code; two counts of invitation to sexual touching, contrary to section 152 of the Criminal Code; one count of sexual exploitation, contrary to section 153(1)(a) of the Criminal Code; one count of assault, contrary to section 266(a) of the Criminal Code; one count of obtaining sexual service of a person under 18 years old, contrary to section 212(4) of the Criminal Code; one count of making child pornography, contrary to section 163.1(2)(a) and one count of possession of child pornography, contrary to section 163.1(4)(a) of the Criminal Code are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of Canada, as required by Title 18, United States Code, Section 3190.

In testimony whereof I hereunto sign my name and cause my seal of office to be affixed this 13th day of March 2020.

Richard M. Mills Jr.
Chargé d'Affaires of the
United States of America

SENSITIVE BUT UNCLASSIFIED

Form 36- Foreign Service



Department of Justice      Ministère de la Justice
Canada                     Canada

Ottawa, Canada
K1A 0H8


## CERTIFICATE OF AUTHENTICATION


IN THE MATTER OF the request for the extradition of **Parthasarathi KAPOOR** from the United States of America to Canada


I, Cathy Chalifour, Senior Counsel, International Assistance Group, Department of Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated documentation presented by Canada in support of the request for the extradition of **Parthasarathi KAPOOR** who stands charged in the Province of Quebec with four counts of sexual interference, contrary to section 151 of the *Criminal Code*; four counts of sexual assault, contrary to sections 265(1) and 271(1)(a) of the *Criminal Code*; two counts of invitation to sexual touching, contrary to section 152 of the *Criminal Code*; one count of sexual exploitation, contrary to section 153(1)(b) of the *Criminal Code*; one count of assault, contrary to section 266(a) of the *Criminal Code*; one count of obtaining sexual service of a person under 18 years old, contrary to section 212(4) of the *Criminal Code*; one count of making child pornography, contrary to section 163.1(2)(a); and one count of possession of child pornography, contrary to section 163.1(4)(a) of the *Criminal Code*.

THAT the documentation attached to this certificate is composed of:

-      the Affidavit of Law of Marie-Josée Harvey, Prosecutor, Director of Criminal and Penal Prosecutions of Quebec; and

-      the Affidavit of Fact of Sergeant Detective Pascal Fortier, peace officer with the Service de police de Montréal, to which is appended:

      -      as exhibit "A", a true copy of the Warrant for Arrest/Information dated January 31, 2003 issued by Justice of the Peace Jean-Georges Laliberté.


THAT Jean Caron, whose original signature appears at the end of the Affidavit of Marie-Josée Harvey is a Commissioner of Oaths for the Province of Quebec, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.



THAT Gilbert Côté, whose original signature appears at the end of the Affidavit of Pascal Fortin, is a Commissioner of Oaths for the Province of Quebec, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

The Seal of the Minister of Justice of Canada is hereby affixed this 12th day of March, 2020.

Cathy Chalifour

**CANADA**

**PROVINCE OF QUEBEC**
**DISTRICT OF QUEBEC**

N° **500-01-001683-033**

**RE : DIRECTOR OF CRIMINAL AND PENAL PROSECUTION**

v.

**PARTHASARATHI KAPOOR**

**IN THE MATTER of a request by Canada for the extradition of Parthasarathi Kapoor from the United States of America with respect to offences under the** *Criminal Code*

---

**AFFIDAVIT OF LAW**
**M<sup>E</sup> MARIE-JOSÉE HARVEY**

---

I, Marie-Josée Harvey, prosecuting attorney for the Director of Criminal and Penal Prosecutions of Quebec, having my principal place of business at 2828, boulevard Laurier, Québec, in the province of Quebec, declare the following:

## QUALIFICATIONS

1.    I have been a criminal and penal prosecuting attorney in Quebec since January 2019 and, as such; I act as a representative and under the authority of the Director of Criminal and Penal Prosecutions of Quebec;

2.    Under the general authority of the Minister of Justice and Attorney General, the Director of Criminal and Penal Prosecutions directs all criminal and penal prosecutions in Quebec on behalf of the State. The Director exercises the functions conferred by the *Act respecting the*

*Director of Criminal and Penal Prosecutions* [RLRQ (Quebec Statute), D-9.1.1], with the independence provided for therein. The Director is by virtue of office "Deputy Attorney General" for criminal and penal prosecutions. The Director is also the lawful deputy of the Attorney General of Quebec within the meaning of the *Criminal Code* ("*Criminal Code*") (Revised Statutes of Canada, 1985, c. C-46), as are the prosecutors under the Director's authority;

3.   In the performance of my duties as a criminal and penal prosecuting attorney, I am empowered to represent the Director of Criminal and Penal Prosecutions in the exercise of the functions of office, including that of prosecutor in matters stemming from the application of the *Criminal Code*. As such, I am authorized by the Director of Criminal and Penal Prosecutions of Quebec to initiate the extradition process against Parthasarathi KAPOOR (Date of birth: 1973-12-18), in the court cases bearing number 500-01-001683-033, on behalf of the Director of Criminal and Penal Prosecutions of Quebec.

## OVERVIEW OF EXTRADITION REQUEST

4.   Canada is seeking the extradition of Parthasarathi KAPOOR (hereinafter KAPOOR) so that he may face charges the following charges, all of which have been laid against him under the *Criminal Code*:

- sexual interference on R.S. (1989-12-16) between June 24, 1998 and September 1, 1998 in Montreal;
- sexual assault on R.S. (1989-12-16), between June 24, 1998 and September 1, 1998 in Montreal;
- sexual interference on N.A. (1986-12-31), between July 1, 1999 and December 31, 2000, in Montreal;
- invitation to sexual touching on N.A. (1986-12-31), between July 1, 1999 and December 31, 2000;
- sexual exploitation on N.A. (1986-12-31) between December 31, 2000 and April 30, 2002 in Montreal;
- sexual assault on N.A. (1986-12-31) between July 1, 1999 and April 30, 2002 in Montreal;
- assault on N.A. (1986-12-31) between March 1, 2002 and April 30, 2002 in Montreal;
- obtaining, for consideration, the sexual services of a person under eighteen (N.A., 1986-12-31) between July 1, 1999 and April 30, 2002 in Montreal;
- making child pornography, between July 1, 1999 and April 30, 2002 in Montreal;
- possession of child pornography, between July 1, 1999 and April 30, 2002 in Montreal;

- sexual interference on T.A. (1993-01-07) between June 1, 1998 and September 1, 1998 in Montreal;
- sexual assault on T.A. (1993-01-07) between June 1, 1998 and September 1, 1998 in Montreal;
- sexual interference on S.S. (1995-12-03) between September 1, 2002 and January 4, 2003 in Montreal;
- invitation to sexual touching on S.S. (1995-12-03) between September 1, 2002 and January 4, 2003 in Montreal;
- sexual assault on S.S. (1995-12-03) between September 1, 2002 and January 4, 2003 in Montreal;

5.   Under Canadian law, a person may be formally charged with a crime when an Information is sworn before a justice (i.e. a Justice of the Quebec Court of Justice or a Justice of the Peace). The charge is formally instituted when a person, usually a peace officer, swears under oath that he or she has reasonable and probable grounds to believe that an accused has committed the offence(s) detailed in the Information. Following the laying of an Information, a warrant for the arrest of the accused person may be issued where the Justice considers that a case for doing so is made out. In Quebec, an arrest warrant acts as an Information.

6.   In the file 500-01-001683-033, on January 31st, 2003 the Director of Criminal and Penal prosecution laid charges of sexual interference, sexual assault, invitation to sexual touching, sexual exploitation, assault, making and possession of child pornography against KAPOOR after receiving Detective Guy Bianchi and Christine Debon of the *Service de police de Montreal* (SPVM) police report. The same day, Justice of the Peace Jean-Georges Laliberté issued a warrant for the arrest of KAPOOR.   Attached to the Affidavit of fact of Detective Pascal Fortier as Exhibit "A" is a true copy of the arrest warrant issued on January 31st, 2003. The arrest warrant is of full force and effect in Canada. In Quebec an arrest warrant also acts as the Information.

7.   Please note that the extradition of KAPOOR is not sought on counts 13 (sexual interference on M.A.) and 14 (sexual assault on M.A.) of the arrest warrant which will accordingly be withdrawn upon KAPOOR first court appearance in Canada. The alleged victim of those offences is untraceable as such the evidence to support those charges is no longer available.

8.   The warrant for arrest will also need to be amended regarding the first name of the KAPOOR which was erroneously spelled Parthasarthie instead of Parthasarathi.

9.   Detective Pascal Fortier has taken over the investigation leaded by Detectives Bianchi and

Debon in 2002-2003. I have reviewed Detective Fortier's affidavit which accompanies this request.  I have also reviewed the material Detective Fortier submitted with this request. Accordingly, I am familiar with the summary of the allegations and the police investigation that has taken place in this case.  As a result, I verily believe that KAPOOR is charged with sexual interference, sexual assault, invitation to sexual touching, sexual exploitation, assault, making and possession of child pornography, all of which stem from KAPOOR's alleged conduct between June 1st, 1998 and January 4th, 2003.

### CRIMINAL CODE PROVISIONS

10.   The *Criminal Code*, Revised Statutes of Canada, 1985, chapter C-46, as amended, is a statute duly enacted by the Parliament of Canada.  It contains the law relating to criminal offences for the whole of Canada. It therefore applies to Quebec. The *Criminal Code* sets out definitions of offences, the maximum sentences possible for those offences, and sometimes also a minimum sentence that must be imposed for some offences.

11.   Under Canadian law, criminal offences are divided into three categories:

   i)    indictable offences;

   ii)   summary conviction offences; and

   iii)  offences that are, at the election of the prosecution, either indictable or summary conviction.  (These offences are often referred to "hybrid" offences).

12.   Generally speaking, indictable offences are more serious offences carrying more severe penalties whereas summary conviction offences are generally less serious offences that carry less severe penalties.

13.   In this case, the offences of sexual interference, sexual assault, invitation to sexual touching, sexual exploitation, assault, making and possession of child pornography are hybrid offences and therefore subject to the election of the prosecution as to whether to proceed by indictment or summary conviction. For each hybrid offence, the Crown has made an election to proceed by indictment. The remaining offence of obtaining, for consideration, the sexual services of a person under the age of eighteen years old is an indictable offence.

14.   The *Criminal Code* contains provisions that codify the offences with which KAPOOR has

been charged. Those provisions, duly enacted and proclaimed into force and as would be applicable in the event of a trial for the offences, are set out below.

## A.   Sexual interference – s. 151 (Counts #1, 3, 11, 13 and 15)

15. Sexual interference is a hybrid offence prohibited by section 151 of the *Criminal Code*.

16. Since the commission of the offences, this section has been modified four times (2005, c. 32, s.3; 2008, c. 6, s. 54; 2012, c. 1, s. 11; 2015, c. 23, s. 2). The penalties have been increased from a maximum of ten years imprisonment in 2003 to fourteen years now. The age of the victim has been modified. It is now 16 years old compared to 14 years old.

17. The offence and prescribed penalty at the time of the commission of the alleged offenses (June 24th, 1998 to January 4th, 2003) are set out in the *Criminal Code* as follows:

> **Sexual interference**
>
> 151. Every person who, for a sexual purpose, touches, directly or indirectly, with a part of the body or with an object, any part of the body of a person under the age of fourteen years is guilty of an indictable offence and liable to imprisonment for a term not exceeding ten years or is guilty of an offence punishable on summary conviction.

18. This section now reads :

> **Sexual interference**
>
> 151. Every person who, for a sexual purpose, touches, directly or indirectly, with a part of the body or with an object, any part of the body of a person under the age of 16 years
>
> > (a) is guilty of an indictable offence and is liable to imprisonment for a term of not more than 14 years and to a minimum punishment of imprisonment for a term of one year; or
> >
> > (b) is guilty of an offence punishable on summary conviction and is liable to imprisonment for a term of not more than two years less a day and to a minimum punishment of imprisonment for a term of 90 days.

19. The proceedings will be held under the wording of the offence that was in force at the time the offences were committed.

20. In regards to the penalty, since the prosecution made an election to proceed by indictable

offence, the accused is liable to imprisonment for a maximum of ten years. In Canada, the accused has the right to receive the lesser of the punishments under the laws in force at the time of his offences and of his sentencing.

21.   In order the prove this offence, the prosecution must establish that (1) the accused touched the victim, (2) the sexual nature of the contact and (3) the victim is under the age of 14 years old. The sexual nature of the contact implies a specific intent. The *mens rea* of the offence can be proven either by direct evidence, or it may be inferred from circumstantial evidence or from the nature of the touching itself (ie. the only reasonable inference to be drawn from the circumstantial evidence or from the nature of the touching itself is that the accused committed the touching for a sexual purpose).

## B.   Sexual assault – sections 265(1) and 271(1) a) (Counts #2, 6, 12, 14, and 17)

22.   Sexual assault is a hybrid offence prohibited by sections 265(1) and 271 of the *Criminal Code*. Section 265(1) contains the definition of the offence and section 271 gives the penalties.

23.   Since the commission of the offences, section 271 has been modified three times (1994, c. 44, s. 19; 2012, c. 1, s. 25; 2015, c. 23, s. 14). Only the penalties have been increased. Section 265(1) remain unchanged.

24.   At the time the alleged offences were committed, those sections provided :

> **Assault**
>
> **265** (1) A person commits an assault when
>
> (a) without the consent of another person, he applies force intentionally to that other person, directly or indirectly;
> (b) he attempts or threatens, by an act or a gesture, to apply force to another person, if he has, or causes that other person to believe on reasonable grounds that he has, present ability to effect his purpose; or
> (c) while openly wearing or carrying a weapon or an imitation thereof, he accosts or impedes another person or begs.
>
> (2) This section applies to all forms of assault, including sexual assault, sexual assault with a weapon, threats to a third party or causing bodily harm and aggravated sexual assault. [ ... ]

**Sexual assault**

**271** (1) Every one who commits a sexual assault is guilty of

(a) an indictable offence and is liable to imprisonment for a term not exceeding ten years; or

(b) an offence punishable on summary conviction and liable to imprisonment for a term not exceeding eighteen months.

(2) [Repealed, R.S., 1985, c. 19 (3rd Supp.), s. 10]

25.   Section 271 now reads as follows:

**Sexual assault**

**271** Everyone who commits a sexual assault is guilty of

(a) an indictable offence and is liable to imprisonment for a term of not more than 10 years or, if the complainant is under the age of 16 years, to imprisonment for a term of not more than 14 years and to a minimum punishment of imprisonment for a term of one year; or

(b) an offence punishable on summary conviction and is liable to imprisonment for a term of not more than 18 months or, if the complainant is under the age of 16 years, to imprisonment for a term of not more than two years less a day and to a minimum punishment of imprisonment for a term of six months.

26.   Since the prosecution chose to proceed by indictment under 271(1)a) of the *Criminal Code*, the accused is liable to imprisonment for a maximum of ten years, regardless of the age of the victim. As said earlier, in Canada, the accused has the right to receive the lesser of the punishments under the laws in force at the time of his offences and of his sentencing.

27.   In order to prove this offence, the prosecution must first establish the *actus reus* that requires the proof of three elements: (1) touching, (2) the sexual nature of the contact and (3) the absence of consent. In regards to the consent, it must be added that at the time of the offences, the age of consent to sexual activity in Canada was 14 years old. At the time of the alleged offences, section 150.1(1) *Criminal code* provided that: "Where an accused is charged with an offence under section [ ... ] 271 [ ... ] in respect of a complainant under the age of fourteen years, it is not a defence that the complainant consented to the activity that forms the subject-matter of the charge". The prosecution must also demonstrate the *mens rea* (mental element) that contains two elements: (1) the intention to touch and (2) knowing of, or being reckless of or willfully blind to, a lack of consent on the part of the person touched.

### C.    Invitation to sexual touching – section 152 (Counts #4 and 16)

28.    The offence of invitation to sexual touching is a hybrid offence prohibited by section 152 of the *Criminal Code*.

29.    The section 152 has seen some minor modifications since the alleged infractions occurred (2005, c. 32, s. 3; 2008, 2008, c. 6, s. 54; 2012, c. 1, s. 12, 2015, c. 23, s. 3). The amendments relate to the sentence applicable.

30.    The applicable sections of the *Criminal Code* read as follows at the time the alleged offences were committed:

> **Invitation to sexual touching**
>
> **152.** Every person who, for a sexual purpose, invites, counsels or incites a person under the age of fourteen years to touch, directly or indirectly, with a part of the body or with an object, the body of any person, including the body of the person who so invites, counsels or incites and the body of the person under the age of fourteen years, is guilty of an indictable offence and liable to imprisonment for a term not exceeding ten years or is guilty of an offence punishable on summary conviction.

31.    It now reads :

> **Invitation to sexual touching**
>
> **152.** Every person who, for a sexual purpose, invites, counsels or incites a person under the age of 16 years to touch, directly or indirectly, with a part of the body or with an object, the body of any person, including the body of the person who so invites, counsels or incites and the body of the person under the age of 16 years,
>
> (a) is guilty of an indictable offence and is liable to imprisonment for a term of not more than 14 years and to a minimum punishment of imprisonment for a term of one year; or
>
> (b) is guilty of an offence punishable on summary conviction and is liable to imprisonment for a term of not more than two years less a day and to a minimum punishment of imprisonment for a term of 90 days.

32.    Since the prosecution proceeded by indictment, the accused is liable to imprisonment for a maximum of ten years. As mentioned earlier, he is allowed to receive the lesser of the punishments under the laws in force at the time of his offences and of his sentencing

33.    In order to prove the offence, the prosecution must establish that (1) invitation, incitement

or counselling by the accused to touch him, to touch himself or to touch another person, (2) the invitation or incitement had a sexual purpose and (3) the victim was under 14 years old at the time of the offences. The *mens rea* (mental element) of the offence is that the accused knowingly communicated for a sexual purpose with a child under the age of fourteen, and that the accused intended that the child would receive that communication as being an invitation, incitement or counselling to do the physical contacts.

## D.    Sexual exploitation – Section 153(1)b) (Count #5)

34.    The offence of sexual exploitation is a hybrid offence prohibited by section 153 of the *Criminal Code*. This section has been modified four times since the alleged offence occurred (2005 c. 32, s. 3; 2008, c. 6, s. 54; 2012, c. 1, s. 12; 2015, c. 23, s. 3). The wording has been reviewed and the applicable sentence revised.

35.    The applicable sections of the *Criminal Code* read as follows at the time the alleged offences were committed:

> **Sexual exploitation**
>
> **153** (1) Every person who is in a position of trust or authority towards a young person or is a person with whom the young person is in a relationship of dependency and who
>
> (a) for a sexual purpose, touches, directly or indirectly, with a part of the body or with an object, any part of the body of the young person, or
>
> (b) for a sexual purpose, invites, counsels or incites a young person to touch, directly or indirectly, with a part of the body or with an object, the body of any person, including the body of the person who so invites, counsels or incites and the body of the young person,
>
> is guilty of an indictable offence and liable to imprisonment for a term not exceeding five years or is guilty of an offence punishable on summary conviction.
>
> **(2)** In this section, *young person* means a person fourteen years of age or more but under the age of eighteen years.

36.    The corresponding provisions now read as follows:

> **Sexual exploitation**
>
> **153** (1) Every person commits an offence who is in a position of trust or authority towards a young person, who is a person with whom the young

person is in a relationship of dependency or who is in a relationship with a young person that is exploitative of the young person, and who

(a) for a sexual purpose, touches, directly or indirectly, with a part of the body or with an object, any part of the body of the young person; or

(b) for a sexual purpose, invites, counsels or incites a young person to touch, directly or indirectly, with a part of the body or with an object, the body of any person, including the body of the person who so invites, counsels or incites and the body of the young person.

(1.1) Every person who commits an offence under subsection (1)

(a) is guilty of an indictable offence and is liable to imprisonment for a term of not more than 14 years and to a minimum punishment of imprisonment for a term of one year; or

(b) is guilty of an offence punishable on summary conviction and is liable to imprisonment for a term of not more than two years less a day and to a minimum punishment of imprisonment for a term of 90 days.

37.   Since the prosecution proceeded by indictment, the accused is liable to a term of imprisonment not exceeding five years. The accused is entitled to the lesser of the punishments under the laws in force at the time of his offences and of his sentencing.

38.   In order to prove the offence, the prosecution must establish that (1) the accused is a person in a position of trust or authority towards the victim or is a person with whom the victim is in a relationship of dependency, (2) the victim is over fourteen years old but under the age of eighteen years and (3) touching for a sexual purpose or invitation, incitement or counselling by the accused to touching for a sexual purpose. The *mens rea* (mental element) of the offence under 153(1)b) is the same as the *mens rea* required for the offence of invitation to sexual touching.

## E.   Assault – Section 266a) (Count #7)

39.   The offence of assault is a hybrid offence prohibited by sections 265 and 266 of the *Criminal Code*. Section 265 contains the definition of the offence and 266 provides the corresponding penalty. Those sections have not been amended since the commission of the offence.

40.   Those sections provide :

**Assault**

**265** (1) A person commits an assault when

(a) without the consent of another person, he applies force intentionally to that other person, directly or indirectly;

(b) he attempts or threatens, by an act or a gesture, to apply force to another person, if he has, or causes that other person to believe on reasonable grounds that he has, present ability to effect his purpose; or

(c) while openly wearing or carrying a weapon or an imitation thereof, he accosts or impedes another person or begs.

**Assault**

**266** Every one who commits an assault is guilty of

(a) an indictable offence and is liable to imprisonment for a term not exceeding five years; or

(b) an offence punishable on summary conviction.

41. Since the prosecuted elected to proceed by indictment, the accused is liable to imprisonment for a maximum of five years.

42. In order to prove the offence, the prosecution must demonstrate (1) use of force and (2) the absence of consent of the victim. The *mens rea* (mental element) consists of two elements: (1) the intention to touch and (2) knowing of, or being reckless of or willfully blind to, a lack of consent of the victim.

## F.   Prostitution of person under eighteen – Section 212(4) (Count #8)

43. The offence of obtaining, for consideration, the sexual services of a person under the age of eighteen years old is an indictable offence prohibited by section 212(4) of the *Criminal Code*. Since the alleged infractions, this section has been repealed and relocated at section 286.1(2) of the *Criminal Code*.

44. The applicable sections of the *Criminal Code* read as follows at the time the alleged offences were committed :

**Procuring**

**212** (1) Every one who

(a) procures, attempts to procure or solicits a person to have illicit sexual intercourse with another person, whether in or out of Canada,

(b) inveigles or entices a person who is not a prostitute to a common bawdy-house for the purpose of illicit sexual intercourse or prostitution,

(c) knowingly conceals a person in a common bawdy-house,

(d) procures or attempts to procure a person to become, whether in or out of Canada, a prostitute,

(e) procures or attempts to procure a person to leave the usual place of abode of that person in Canada, if that place is not a common bawdy-house, with intent that the person may become an inmate or frequenter of a common bawdy-house, whether in or out of Canada,

(f) on the arrival of a person in Canada, directs or causes that person to be directed or takes or causes that person to be taken, to a common bawdy-house,

(g) procures a person to enter or leave Canada, for the purpose of prostitution,

(h) for the purposes of gain, exercises control, direction or influence over the movements of a person in such manner as to show that he is aiding, abetting or compelling that person to engage in or carry on prostitution with any person or generally,

(i) applies or administers to a person or causes that person to take any drug, intoxicating liquor, matter or thing with intent to stupefy or overpower that person in order thereby to enable any person to have illicit sexual intercourse with that person, or

(j) lives wholly or in part on the avails of prostitution of another person,

is guilty of an indictable offence and liable to imprisonment for a term not exceeding ten years.

[...]

### Offence — prostitution of person under eighteen

(4) Every person who, in any place, obtains for consideration, or communicates with anyone for the purpose of obtaining for consideration, the sexual services of a person who is under the age of eighteen years is guilty of an indictable offence and liable to imprisonment for a term not exceeding five years.

45.   The corresponding provision now states:

### Obtaining sexual services for consideration from person under 18 years

(2) Everyone who, in any place, obtains for consideration, or communicates with anyone for the purpose of obtaining for consideration, the sexual services of a person under the age of 18 years is guilty of an indictable offence and liable to imprisonment for a term of not more than 10 years and to a minimum punishment of imprisonment for a term of

(a) for a first offence, six months; and

(b) for each subsequent offence, one year.

46. As the accused is entitled to the lesser of the punishments under the laws in force at the time of his offences and of his sentencing, he accused is liable for an imprisonment of a maximum of five years.

47. In order to prove this offence, the prosecution must prove that the accused (1) obtained or communicated for the purpose of obtaining (2) for consideration (3) the sexual services of a person and (4) this person is under the age of 18 years old.

## E.   Making child pornography – Section 163.1(2)a) (Count #9)

48. The offence of making child pornography is currently an indictable offence prohibited by section 163.1(4) of the *Criminal Code*. Section 163.1 has been modified four times since the alleged offence occurred (2002 c. 13, s. 5; 2005, c. 32, s. 7; 2012, c. 1, s. 17; 2015, c. 23, s. 7). At the time the alleged offences occurred, making child pornography was a hybrid offence (163.1(2)). The notion of "child pornography" has been redefined and the applicable sentence increased.

49. At the time the alleged offence was committed, the section read as follows:

> **Definition of "child pornography"**
>
> **163.1 (1)** In this section, *child pornography* means
>
> (a) a photographic, film, video or other visual representation, whether or not it was made by electronic or mechanical means,
>
> > (i) that shows a person who is or is depicted as being under the age of eighteen years and is engaged in or is depicted as engaged in explicit sexual activity, or
> >
> > (ii) the dominant characteristic of which is the depiction, for a sexual purpose, of a sexual organ or the anal region of a person under the age of eighteen years; or
>
> (b) any written material or visual representation that advocates or counsels sexual activity with a person under the age of eighteen years that would be an offence under this Act.
>
> **Making child pornography**
>
> (2) Every person who makes, prints, publishes or possesses for the purpose of publication any child pornography is guilty of
>
> (a) an indictable offence and liable to imprisonment for a term not exceeding ten years; or
>
> (b) an offence punishable on summary conviction.

50.   The applicable section of the Criminal code now read as follows:

### Definition of *child pornography*

**163.1 (1)** In this section, *child pornography* means

(a) a photographic, film, video or other visual representation, whether or not it was made by electronic or mechanical means,

(i) that shows a person who is or is depicted as being under the age of eighteen years and is engaged in or is depicted as engaged in explicit sexual activity, or

(ii) the dominant characteristic of which is the depiction, for a sexual purpose, of a sexual organ or the anal region of a person under the age of eighteen years;

(b) any written material, visual representation or audio recording that advocates or counsels sexual activity with a person under the age of eighteen years that would be an offence under this Act;

(c) any written material whose dominant characteristic is the description, for a sexual purpose, of sexual activity with a person under the age of eighteen years that would be an offence under this Act; or

(d) any audio recording that has as its dominant characteristic the description, presentation or representation, for a sexual purpose, of sexual activity with a person under the age of eighteen years that would be an offence under this Act.

### Making child pornography

(2) Every person who makes, prints, publishes or possesses for the purpose of publication any child pornography is guilty of an indictable offence and liable

to imprisonment for a term of not more than 14 years and to a minimum punishment of imprisonment for a term of one year.

51.   As the accused is entitled to the lesser of the punishments under the laws in force at the time of his offences and of his sentencing, the accused is liable for an imprisonment of a maximum of ten years.

52.   In order to prove the commission of this offence, the prosecution has to establish that the accused (1) made, printed, published or possessed, (2) child pornography as defined at section 163.1(1) (see paragraph 49 above).

## E.   Possession of child pornography – Section 163.1(4)a) (Count #10)

53.   The offence of possession of child pornography is a hybrid offence prohibited by section 163.1 (4) a) of the *Criminal Code*. Section 163.1 has been modified four times since the alleged offence occurred (2002 c. 13, s. 5; 2005, c. 32, s. 7; 2012, c. 1, s. 17; 2015, c. 23, s. 7). As previously said, the definition of "child pornography" has been redefined and the applicable sentence increased.

54.   At the times the alleged offence was committed, section 163.1(4) a) provided :

> **Possession of child pornography**
>
> (4) Every person who possesses any child pornography is guilty of
>
> (a) an indictable offence and liable to imprisonment for a term not exceeding five years; or
>
> (b) an offence punishable on summary conviction.

55.   This section now reads :

> **Possession of child pornography**
>
> (4) Every person who possesses any child pornography is guilty of
>
> (a) an indictable offence and is liable to imprisonment for a term of not more than 10 years and to a minimum punishment of imprisonment for a term of one year; or
>
> (b) an offence punishable on summary conviction and is liable to imprisonment for a term of not more than two years less a day and to a minimum punishment of imprisonment for a term of six months.

56.    As the accused is entitled to the lesser of the punishments under the laws in force at the time of his offences and of his sentencing, he accused is liable for an imprisonment of a maximum of five years.

57.    In order to prove the commission of this offence, the prosecution has to establish that the accused (1) possessed (2) child pornography as defined at section 163.1(1) (see paragraph 49 above).

## NO APPLICABLE LIMITATION PERIOD IN THIS CASE

58.    In Canada there is no statutory limitation period of general application in respect of indictable offences, meaning that in the absence of a specific statutory provision to the contrary, the initiation of a prosecution for an indictable offence is not barred by the passage of time.

## OPINION

59.   In Canada, in order to find an accused guilty of an offence contrary to the *Criminal Code*, the trier of fact must be satisfied that the guilt of the accused has been established beyond a reasonable doubt.

60.   I have carefully reviewed the arrest warrant issued in relation to the charges laid against KAPOOR (Affidavit of fact – Exhibit A).  I have also reviewed the affidavit of Detective Pascal Fortier and all of the information that has been provided to me in connection with this request. In my opinion, the evidence disclosed in the affidavit of Detective Fortier establishes a *prima facie* case that KAPOOR is guilty of sexual interference regarding four victims (S.S., R.S., N.A., and T.A.), sexual assault of four victims (S.S., R.S., N.A. and T.A.), invitation to sexual touching on two victims (S.S. and N.A.), sexual exploitation of N.A., assault on N.A., obtaining sexual services of a person under eighteen years old (N.A.), making and possessing child pornography. That is to say, a reasonable jury, properly instructed in the law could, on that evidence, find beyond a reasonable doubt that KAPOOR is guilty of these offences.

61.    More specifically, the information set out in the Affidavit of Detective Fortier amply supports the finding that KAPOOR committed sexual assault, sexual interference and invitation to sexual touching towards the victim **S.S.** (1995-12-03). On January 7th, 2003, S.S. did a filmed interview with Detective Guy Bianchi. During this interview, S.S. said that he met the KAPOOR twice between December 1st, 2002 and January 4th, 2003. The first time, he met him at his grandmother's apartment, Raj Rani. KAPOOR and S.S. went to S.S.' grandmother's bedroom where she kept her computer. The second time, the events relevant to the charges against the KAPOOR happened in the KAPOOR's bedroom, at his apartment. S.S. was brought to the KAPOOR's apartment by his grandmother. On both occasions, the KAPOOR showed S.S. sexualized pictures and videos of men and women. Then the KAPOOR touched S.S. genitals over his clothes and placed S.S.'s hand on his penis. S.S. also told his mother-in-law and his father that the KAPOOR assaulted him. On January 4th, 2003, S.S. said to his mother-in-law that the KAPOOR touched his penis over his clothes and kissed his face and lips. The same day, he told his father that KAPOOR had touched and kissed him all over his body. On January 8th, 2003, Detective Bianchi executed a search warrant at the Raj Rani's apartment and found sexualized pictures on her computer. The KAPOOR's roommate was interviewed during the investigation. He declared that he saw S.S. at the apartment of Raj Rani and told the police that the KAPOOR spent time with S.S. alone in her bedroom.

62.    The evidence also supports the finding that KAPOOR committed sexual assault and sexual interference on the victim **R.S.** (1989-12-16). On January 7th, 2003, R.S. made a written statement with Detective Debon. He said he met the KAPOOR in 1998 when he was 8 years old. During July 1998, R.S. went to the KAPOOR's apartment to play video games. One day, the KAPOOR kissed him on the lips while they were wrestling. A week after, the KAPOOR entered the bathroom while R.S. was inside and locked the door. KAPOOR then dropped R.S.'s pants and touched his penis. After this event, R.S. refused to go back at the KAPOOR's apartment and told his cousin, N.A., about what had happened.

63. The evidence also demonstrates that KAPOOR committed several offences against **N.A.** (1986-12-31): sexual assault, sexual interference, invitation to sexual touching, sexual exploitation, assault and obtaining sexual services from a person under eighteen years old. On January 15th, 2003, N.A. and his friend Nadeem Akbar went to see Detective Debon and gave her a videotape made by KAPOOR that shows N.A. masturbating on a couch. The lower part of his body is naked. His I.D. cards are shown to the camera before he starts masturbating. On January 21st, 2003, N.A. met with Detective Debon. He told her that during the summer of 1999, the KAPOOR showed him homosexual videos. The KAPOOR did a fellatio to N.A. and N.A. did one to the KAPOOR. The KAPOOR filmed the scene without telling N.A. He then used the video to force N.A. to come back, otherwise, the KAPOOR would show the video to N.A.'s parents and to everyone. While N.A. was crying, the KAPOOR slapped him and threatened him again. N.A. went back to see the KAPOOR a week after. Abuses went on from July 1999 to April 2002, except when the KAPOOR was outside the country. During this period, N.A. suffered fellatio, masturbation, anal penetration, incitation to sexual touching almost five days a week. At one point, it came to N.A.'s knowledge that he was being filmed during the abuses.

64. In December 2000, N.A. turned 14 years old. He was then legally able to consent to sexual activity but in reality, his consent was vitiated by the position of trust established between the KAPOOR and N.A. and by the relationship of dependency the KAPOOR created between him and N.A. To maintain a relationship with N.A., the KAPOOR threatened him with the videos of the two of them and gave him money, food, clothes, shoes and other gifts (pens, a Walkman, videogames, a gym subscription and a cellphone). He also told N.A he wanted to live with him and wished N.A. would leave his family. N.A. stopped going to school to spend his days with KAPOOR. There was a 12-year gap between them, which means the KAPOOR was significantly older than N.A.

65. Finally, KAPOOR assaulted N.A. between March and April 2002. KAPOOR arranged a meeting with N.A. to reclaim the videotapes N.A. had taken from his apartment. N.A. refused and the KAPOOR slapped him and then punched him in the face.

66.   The evidence also supports the finding that KAPOOR committed sexual assault and sexual interference on the victim **T.A.** (1993-01-07). On January 27th, 2003, T.A. did a videotaped interview with Detective Debon. T.A. said that when he was around 5 to 7 years old, during the summer, he went to the KAPOOR's apartment and sat on the couch to play videogames. The KAPOOR touched his butt and his penis underneath his clothes. He never went back to KAPOOR's apartment. This event occurred during the summer of 1998.

67.   The evidence also supports that KAPOOR is guilty of the charges of making and possessing child pornography. The evidence contains a videotape given to the detective Debon on the 15th of January, 2003 by N.A. The latter had previously recovered the videotape at the KAPOOR's apartment. The video shows N.A. sitting on a couch and masturbating. He is wearing a t-shirt but is lower body is naked. The video also shows the victim's ID cards. Since this video is undated, the age of N.A. cannot be determined with certainty.

68.   Futhermore, on April 15th, 2003, Detective Bianchi went to see Saleh Mohammed Kaoser, a former roommate of KAPOOR. Mr. Kaoser told him KAPOOR came to his apartment on the 13th or the 14th of April, 2003 and left a bag. KAPOOR was on his way to Brampton, Ontario. Detective Bianchi seized the bag which contained, amongst other things, eight videotapes. The notes taken by detective Bianchi while watching the videos describe that on one of the tapes KAPOOR filmed his immigration papers. That same tape shows N.A., 13 or 14 years old, engaging in sexual activity alone or with the KAPOOR at many occasions between December 2000 and September 2001 (nudity, kissing, masturbation and fellatio).

69.   I am also of the opinion that these offences are properly triable in the Province of Quebec, and that the criminal courts in the Province of Quebec have jurisdiction to try KAPOOR for these offences.

70.   The offences for which KAPOOR has been charged are not of a political character. I am also of the opinion that the charges have not been laid against KAPOOR for the purpose of prosecuting him on account of his race, tribe, nationality, religion, sex or political opinion, and that, if returned to Canada, he will not be prejudiced by reason of his race, tribe, nationality, religion, sex or political opinion.

71.   Extradition is sought and, if successful, the Crown will proceed with the prosecution of KAPOOR for the aforementioned criminal offences.

72.   This affidavit is made in good faith in support of a request by Canada for the extradition of KAPOOR with respect to the alleged offences, and for no improper purpose.

Signed in Quebec, March 2nd, 2020

**Marie-Josée Harvey**
**Criminal and Penal Prosecuting Attorney**
Director of Criminal and Penal Prosecutions
2828, boulevard Laurier, suite 500
Québec (Québec)  G1V 0B9

Sworn before me in Québec city,
this day of March 2nd, 2020

**Jean Caron**
**Attorney at law**
(*Courts of Justice Act*, RLRQ, c. T-16, art. 219)

Jean Caron
Avocat
202566-4

CANADA

**PROVINCE OF QUÉBEC**
**DISTRICT OF MONTRÉAL**

No. 500-01-001683-033

RE: DIRECTOR OF CRIMINAL AND
PENAL PROSECUTION

v.

PARTHASARATHI KAPOOR

IN THE MATTER of a request by Canada for
the extradition of Parthasarathi Kapoor
from the United States of America with
respect to offences under the *Criminal Code*

---

### AFFIDAVIT OF FACT
### DETECTIVE PASCAL FORTIER

---

1.     I, the undersigned, Pascal Fortier, #4614, detective-sergeant for the Service de police de la
Ville de Montréal (SPVM), having my principal place of work at 10351, rue Sherbrooke Est,
Montréal, in the Province of Québec, declare the following:

## A.     INTRODUCTION

2.     I have been a police officer with the SPVM for the past 22 years and am currently assigned
to the Équipe de surveillance des délinquants sexuels.

3.     I am in charge of the investigation concerning the charges against KAPOOR, Parthasarathi
(1973-12-18) (hereinafter KAPOOR). I have read the entire investigative file of investigators Guy
Bianchi and Christine Debon who led the investigation in 2002-2003. Below, I have indicated the
source of each element of information in the file.

4.     The following is a summary of the evidence available and upon which the prosecution of KAPOOR in Canada and this request for extradition are founded.

## B.     THE CHARGES

5.     Canada is seeking the extradition of KAPOOR so that he may be prosecuted on the following charges (see Exhibit A – Warrant for Arrest):

- Sexual interference, (4 counts), contrary to section 151 of the *Criminal Code* of Canada
- Invitation to sexual touching, (2 counts) contrary to section 152 of the *Criminal Code* of Canada
- Sexual assault (4 counts), contrary to section 271(1)(a) of the *Criminal Code* of Canada
- Sexual exploitation, contrary to section 153(1)(b) of the *Criminal Code* of Canada
- Assault, contrary to section 266(a) of the *Criminal Code* of Canada
- Obtain sexual service of a person under 18 years old, contrary to section 212(4) of the *Criminal Code* of Canada
- Making child pornography, contrary to section 163.1(2)a of the *Criminal Code* of Canada
- Possession of child pornography, contrary to section 163.1(4)(a) of the *Criminal Code* of Canada.

6.     These charges stem from incidents committed in the city of Montréal, in the province of Quebec, Canada.

7.     On January 20th, 2020, KAPOOR was provisionally arrested by US marshals at the Newark airport, U.S.A. in connection with this case and detained under the provisional arrest warrant.

## C.     SUMMARY OF ALLEGATIONS

8.     Between September 1, 1998 and January 4, 2003, KAPOOR was looking to befriend young boys between the ages of 7 and 14 of Indian/Asian origin and then invite them to his residence under the pretext of playing with a video game console. Four male victims have currently been identified. Two investigations were initially conducted separately by investigators Bianchi and Debon, before becoming a joint investigation. Based on the evidence, KAPOOR was showing young boys pornographic images on the Internet or from a personal collection. He then engaged in various sexual acts with the young boys, including sexual touching, masturbation, oral sex and

sodomy. He frequently filmed these acts. Knowing that he was under investigation, KAPOOR fled from Canadian authorities in early 2003.

## Investigative file of DS Guy Bianchi
**Victim:      S.S. (1995-12-03)**

9.      On January 5, 2003, DS Guy Bianchi of the sexual assault division was assigned a sexual assault investigation involving a 7-year-old child (S.S.) and an individual named "Harry". The victim's statement revealed that S.S. had been regularly visiting his grandmother, Raj Rani, residing at 14873, rue Lirette, apt. #3, in Pierrefonds, to spend the day with her. In December 2002, S.S. went to his grandmother's residence and met Harry. On January 3, 2003, Harry showed pornographic sites, touched S.S.'s genitals and asked S.S. to touch his genitals. S.S. told his father about it in the evening. A complaint was filed with the Montréal police on January 4, 2003. This complaint was the basis of the investigation led by DS Guy Bianchi.

10.     On January 7, 2003, DS Guy Bianchi met with the then seven-year-old victim, S.S., in a videotaped interview conducted at the sexual assault section. During the interview, S.S. stated that his grandmother Raj Rani had weekly access rights. He would visit her every other Saturday from 10 a.m. to 5 p.m. and every other Wednesday from 5 p.m. to 8 p.m., alternately. During his visits, he met two individuals. One, called Kapoor, was good, while the other, called Harry, was bad. On January 10, 2003, S.S. identified in photos (Exhibit B) Parthasarathi KAPOOR (accused) as Harry (the bad one). In addition, S.S. identified Gurpal Singh, the accused's roommate, as Kapoor (the good one). For the sake of simplicity, and where appropriate, in this document the first name "Harry" will be replaced by KAPOOR, the individual accused in this file.

11.     During the video interview between S.S. and DS Bianchi conducted on January 7, 2003, S.S. also said that KAPOOR would take advantage of the times when S.S. was alone with him to use a computer to show him images, films and photos with sexual connotations. KAPOOR would then caress S.S.'s genitals through his clothing and invited S.S. to touch him. In his statement, S.S. described two separate incidents. The first occurred around December 1, 2002 in Raj Rani's apartment at 14847, rue Lirette, apt. #3, in Pierrefonds. KAPOOR took S.S. into his grandmother's bedroom. On the computer, he showed S.S. pornography including a photo of a man sucking a woman's breast. The man and woman were both naked. S.S. said that he saw the man's [TRANSLATION] "wee-wee". KAPOOR put his hand on S.S.'s penis, over his trousers. Then he

took S.S.'s hand and placed it on his penis, over his trousers. S.S. stated that KAPOOR's penis felt hard.

12.    The second incident occurred between December 1, 2002 and January 4, 2003. S.S. indicated that it took place in the bedroom of KAPOOR's apartment. S.S. stated that KAPOOR's laptop computer was in a plastic bag. They looked at pornographic pictures and videos. KAPOOR took S.S.'s hand and placed it on his penis. The interview video shows S.S. demonstrating the placement of a hand on his penis, saying "and he made me touch his . . .". S.S. did not at any time during the incident see KAPOOR's penis and KAPOOR did not see his. The touching was through clothing. S.S. told his father everything.

13.    On January 7, 2003, DS Guy Bianchi received the written statement from S.S.'s father, Gurdeep Singh. He stated that Raj Rani is his ex-mother-in-law and that he is on bad terms with her. The latter was granted access to her grandson following a court order allowing her to have contact with S.S. A few weeks before the disclosure of January 3, 2003, S.S. revealed to his father that a certain Harry (KAPOOR) was showing him bad things and that he had made him dance to a sexy song. Gurdeep Singh asked his son to call him if KAPOOR ever did it again when S.S. was visiting his grandmother at her residence. On the afternoon of January 4, 2003, S.S. called him from Raj Rani's home, saying that KAPOOR had shown him bad things again. Gurdeep Singh asked him to tell his grandmother and then went to Raj Rani's residence to take S.S. home. Gurdeep Singh left his son with his spouse, Namrita Duggal. While S.S. was alone with Namrita Duggal, he told her that KAPOOR had committed sexual touching on him. Upon returning home, Gurdeep Singh questioned his son. S.S. told him that KAPOOR had touched him all over his body, removed his sweater, kissed him everywhere and showed him pornographic images on the computer. S.S. described a movie with three naked guys and a naked girl. He also mentioned that one of the three boys [TRANSLATION] "sucked on the girl like a baby". Gurdeep Singh contacted Raj Rani who told him that KAPOOR was just visiting and that he was about to leave for the United States.

14.    On January 7, 2003, DS Guy Bianchi took the written statement from Namrita Duggal. She stated that on January 2, 2003, S.S. was very interested in a photo of a woman breastfeeding her child. Later that day, S.S. mentioned to her that KAPOOR had, on his computer, shown S.S. pictures of naked women. Namrita Dugaal stated that on January 4, 2003, S.S. was returning from Raj Rani's residence when he mentioned that he had seen films with KAPOOR while they were

alone. S.S. said that his grandmother took him to KAPOOR's residence and that KAPOOR showed him a film on a computer involving a girl and four boys. One of the boys was sucking on the girl's breasts. KAPOOR touched S.S.'s penis through his clothing, made S.S. remove his sweater, kissed him on his face and, for a longer duration, on his lips.

15.    On January 8, 2003, DS Guy Bianchi obtained a court authorization to search the residence of Raj Rani, S.S.'s grandmother (14847, rue Lirette, apt. #3, Pierrefonds). During the search, an LG52X computer tower was seized. A preliminary expert examination of the computer's hard drive was conducted on-site by officer Frank Massa from the technological crimes section. The examination revealed the presence of content with sexual connotations. One of the photos found was an individual sucking on a woman's nipples.

16.    On January 8, 2003, during the search, DS Guy Bianchi took Raj Rani's written statement. In it she stated that Harry's real name is KAPOOR, but that S.S. calls him Harry. She does not know his last name. A friend, Gurpal Singh, had introduced her to KAPOOR. KAPOOR had been going to her house since he was introduced to her. She thinks that he is 25 years old. On January 4, 2003, she went shopping with S.S. and drove KAPOOR to her residence. In her room, she had a computer connected to the Internet.  KAPOOR would play computer games with S.S. while she was cooking. She believed that KAPOOR lived near the Côte-Vertu metro station. She was aware of a conversation between S.S. and his father concerning KAPOOR. During the call, she heard S.S. tell his father that KAPOOR had shown him bad things. Later, Raj Rani confronted KAPOOR who denied the facts. She described KAPOOR as an East Indian who spoke French and English, 1.8 m. tall, clean-shaven and with short hair. KAPOOR's telephone number was 514-748-6602.

17.    On January 8, 2003, DS Patrice Carrier obtained confirmation from the information section that the telephone number given by Raj Rani to reach KAPOOR, 514-748-6602, was that of Gurpal Singh, residing at 555, boul. Marcel Laurin, apt. #102-C, in Ville St-Laurent.

18.    On January 9, 2003, DS Guy Bianchi spoke with Gurpal Singh. The latter is KAPOOR's roommate. The two men resided at 555, boul. Marcel Laurin, apt. #102-C, in Ville St-Laurent. KAPOOR was known as Harry. Gurpal Singh mentioned that KAPOOR left for the United States the day before. Gurpal Singh confirmed that KAPOOR had a laptop computer which he kept in a plastic bag.

19.    On January 9, 2003, DS Bianchi contacted Immigration Canada. A search of the database revealed that KAPOOR, Parthasarathi (1973-12-18) had given 555 boul. Marcel Laurin, apt. #102, Ville St-Laurent, as his address. He has had permanent resident status in Canada since October 17, 2000.

20.    On January 9, 2003, DS Christine Debon informed DS Guy Bianchi that KAPOOR was also the suspect in a sexual assault case involving two young victims  (victims R.S. and N.A.). These two complainants allege that the suspect gained their trust by inviting them to play video games, showed them photographs of a sexual nature on the computer, sexually assaulted them and produced child pornography. The link between the two investigative files was made when DS Bianchi identified the suspect from his file. On December 16, 2002, Parthasarathi KAPOOR (73-12-18) had already been identified as a suspect in the initial incident involving R.S. and N.A. On January 4, 2003, the incident report involving S.S. instead identified a suspect by the name of "Harry". It was not until January 9, 2003 that, through DS Bianchi's investigation, it was possible to identify the potential suspect as Parthasarathi KAPOOR. From that point onward, it became a joint investigation into KAPOOR by DS Bianchi and DS Debon.

21.    On January 9, 2003, DS Guy Bianchi searched the residence of KAPOOR and Gurpal Singh (555, boul. Marcel Laurin, apt. #102, Ville St-Laurent).  No laptop computer was found on the premises. However, a number of items were seized, including:

- A Sony Cam camera and a cassette
- A list of telephone numbers, including that of Raj Rani, the grandmother of S.S.
- Pieces of ID in the name of N.A.: a Gym Zone membership card and a card issued by the Évangeline high school in Montréal
- Evidence of rental occupancy in the name of KAPOOR, Parthasarathi (mail from American Express, MBNA and the Bank of Montreal)
- Evidence of rental occupancy from the Canadian passport office, dated January 8, 2001, in the name of KAPOOR Parthasarathi and addressed to: 4752, de Courtrai #2, Montréal
- 29 photographic prints of individuals, including three photographs showing the individual whom Gurpal Singh and S.S. later identified as KAPOOR
- No video game was seized on the premises. However, DS Patrice Carrier observed that there were many Nintendo-type games.

22.    On January 9, 2003, DS Guy Bianchi took the sworn version of Gurpal Singh,  KAPOOR's roommate. He stated that he met KAPOOR upon his arrival in Canada. KAPOOR had placed an

accommodation-for-rent ad. He started living with KAPOOR around November 2002. He had twice accompanied KAPOOR to Raj Rani's residence since November 20. Raj Rani was to help KAPOOR find work. Gurpal Singh had already seen Raj Rani's grandson, whom he knew by the nickname "Sonu" and who was 7-8 years old. Sonu knew KAPOOR under the name of Harry. KAPOOR had already spent time with Sonu in the bedroom at Raj Rani's. He recognized KAPOOR in the photos seized at their apartment. He pointed out that the photo album belonged to KAPOOR. Gurpal Singh voluntarily handed over a photo of himself so that he could be identified by the victims. He did not claim ownership of any property seized from their apartment.

23.    On January 10, 2003, DS Guy Bianchi showed S.S. the 29 photos seized at the residence of KAPOOR and Gurpal Singh, asking him if he recognized any of the people in the photos. The photo of Gurpal Singh was also shown to him. S.S. recognized KAPOOR and Gurpal Singh without hesitation. For him, KAPOOR is "Harry" and Gurpal Singh is "KAPOOR". Exhibit B of this affidavit is one of the three photos of the accused that S.S. identified on January 10, 2003.

24.    About January 13, 2003, officer Frank Massa of the technological crimes section analyzed the hard drive and CDs seized at Raj Rani's residence (14847, rue Lirette, apt. #3, Pierrefonds). A total of 121 photographs of a sexual nature were found on the computer's hard drive. They were not child pornography.

### Investigative file of DS Christine Debon

**Victims:    N.A. (1985-06-12) Note that, upon their arrival in Canada, N.A.'s father erred in giving the date of June 12, 1985. N.A.'s correct date of birth is 1986-12-31. R.S. (1989-12-16)**

**T.A. (1993-01-07)**

25.    On December 17, 2002, DS Christine Debon was put in charge of a sexual assault investigation, the facts of which occurred at 4752, avenue De Courtrai, apt. #2, Montréal. The evidence revealed that KAPOOR resided at this address. Without knowing the exact dates, it can be proven that KAPOOR resided at this address from October 1998 and that he left it in 2002. In fact, on October 23, 1998, a file was opened in the name of KAPOOR at the Société de l'assurance automobile du Québec; he had declared his residence as 4752, avenue de Courtrai, apt. #2, Montréal. N.A., one of the victims who will be introduced shortly, stated that he had met KAPOOR in front of his residence, at 4752, avenue de Courtrai. This victim also affirmed that the assaults

suffered between July 1999 and April 2002 took place on avenue de Courtrai. In addition, in August 2001, an investigation in connection with an attempted kidnapping of a 9-year-old boy was conducted by DS Gilles Gelderblom at 4752, avenue de Courtrai, apt. #2. The suspect in connection with the incident, Parthasarathi KAPOOR (1973-12-18), was met at 4752, avenue de Courtrai, apt #2, Montréal. DS Gelderblom used the suspect's health insurance card and social insurance number to identify him. This investigation did not lead to charges being laid. Lastly, in his statement of January 9, 2003, Gurpal Singh stated that he began living with KAPOOR in November 2002 at 555, boul. Marcel-Laurin apt. #102-C, in Ville St-Laurent.

26. The complaint, upon which was founded DS Christine Debon's investigation at 4752, avenue de Courtrai, apt. 2, Montréal, was filed following the discovery of a pellet gun in the possession of R.S. at school. On December 15, 2002, R.S. drafted a written statement for the school administration to justify his possession of it. He explained that he had bought the pellet gun to scare a neighbour named KAPOOR. He stated that the latter approached him while he was playing in front of his residence, made him go to his residence to play video games and took advantage of the opportunity to commit sexual touching on him. R.S. filed a formal complaint on December 16, 2002.

27. On January 7, 2003, DS Christine Debon took the written statement of victim R.S., then age 13. R.S. stated that he met KAPOOR in 1998; R.S. was 8 years old at that time and resided at 4702, avenue de Courtrai #43, in Montréal. In July 1998, during the summer vacation, he often went to KAPOOR's residence at 4752, avenue de Courtrai, apt. #2, in Montréal, to play video games. One day, he was wrestling with KAPOOR in the living room when KAPOOR tried to kiss him on the mouth. R.S. pushed him away and left the premises. One week later, he returned to KAPOOR's residence. While he was in the bathroom, KAPOOR opened the door and locked it behind him. R.S. was very uncomfortable. KAPOOR pulled down R.S.'s pants and touched his penis for about 5 to 10 seconds. When someone knocked on the bathroom door, R.S. took advantage of the opportunity to leave the bathroom. Thereafter, R.S. refused to return to KAPOOR's residence, despite the latter's insistence. In 2000, he was riding his bicycle with N.A. when KAPOOR called them over to talk to them. R.S. told N.A. to talk to the "homo". In 2002, N.A. warned R.S. to avoid KAPOOR, because he could be dangerous and was homosexual. As a result of this conversation with N.A., R.S. purchased the pellet gun to scare KAPOOR.

28.     On January 15, 2003, N.A. and his friend, Nadeem Akbar, went to see DS Christine Debon. They handed over 4 VHS cassette tapes to the investigator and told her where they came from. N.A. had taken the cassette tapes from KAPOOR's residence at 4752, avenue de Courtrai, apt. #2, Montréal, around March 2002. He had the keys to the apartment. He then gave the video cassettes to his friend Nadeem Akbar. When KAPOOR learned from his roommate Gurpal Singh what had happened, he quickly returned from the United States and asked N.A. to return his belongings to him. N.A. then went to KAPOOR's residence with Nadeem Akbar, but he refused to return the video cassettes to KAPOOR. An argument broke out and Nadeem Akbar saw KAPOOR throw himself on N.A. to kiss him. Nadeem Akbar approached and KAPOOR stepped back. It was the last time that N.A. was in contact with KAPOOR.  Nadeem Akbar kept the cassettes in a safe place until they were handed over to DS Christine Debon.

29.     On January 15, 2003, the video cassettes were viewed by DS Debon and DS Bianchi and described in their handwritten notes and reports. On one of the video cassettes, N.A. is masturbating, sitting on a sofa. He is wearing a white T-shirt and his lower body is naked. His student card, health insurance card and Shoppers Optimum card are shown on the video before he is seen performing the sexual act. N.A.'s date of birth on the cards is 1985-06-12. As previously mentioned, this birthdate is incorrect. When they arrived in Canada, this is the date of birth that N.A.'s father had given to the authorities. However, N.A.'s actual date of birth is 1986-12-31. The video cassette in question is not dated and is part of the available evidence.

30.     On January 21, 2003, DS Christine Debon met with N.A., then 17 years old. A sworn video interview was conducted. N.A. stated that he met KAPOOR in the summer of 1998 while in front of his apartment block at 4752, avenue de Courtrai, in Montréal. He went to KAPOOR's apartment at 4752, avenue de Courtrai, apt #2, in Montréal, to play video games. He did not report any incident as having occurred in 1998. Around July 1999, during the school holidays, KAPOOR showed him homosexual pornographic videos. N.A. was 12 and one-half years old. KAPOOR performed oral sex on him and N.A. did the same to KAPOOR. KAPOOR ejaculated and filmed everything, unbeknownst to N.A. KAPOOR showed him the video and ordered him to return. KAPOOR threatened him, stating that if N.A. did not return, KAPOOR would show the video to N.A.'s parents, to Bangladesh and everywhere else. He slapped N.A. who was crying and again threatened N.A. N.A. returned to see KAPOOR the following week. The abuse continued from July 1999 to November 1999. KAPOOR then left for the United States. He returned in January 2000 and called N.A. back. Every day, instead of going to school, N.A. went to KAPOOR's

residence at 4752, avenue de Courtrai, apt. #2, Montréal. KAPOOR left for the United States in March 2000 and returned in April 2000. From April 2000 to December 2000, N.A. went to KAPOOR's residence every day except on weekends. From January 2001 to August 2001, he continued to see KAPOOR. He was 14 years old then. N.A. described one time where KAPOOR shaved N.A.'s anus. Oral sex was mutually performed. They were in the bed. KAPOOR attempted to penetrate N.A. anally. He stopped when N.A. asked him to. Thereafter, KAPOOR most often sodomized N.A. during the assaults. In August 2001, KAPOOR left for the United States. Between the autumn of 2001 and winter of 2002, N.A. went to KAPOOR's residence at 4752, avenue de Courtrai, #2, Montréal and retrieved the video cassettes and other items, including a computer. KAPOOR had put a "safety seal" on it, made with "Scotch Tape" on the doors of the cabinet where the video cassettes were kept to ensure that no one could open the cabinet without KAPOOR knowing. KAPOOR's roommate told KAPOOR that N.A. had been by and KAPOOR quickly returned from the United States. Upon his return, KAPOOR called N.A. incessantly. When KAPOOR managed to reach N.A., he asked if N.A. had taken his belongings and asked him to return them to him. The next day or the day after, N.A. went to KAPOOR's residence with his friend, Nadeem Akbar. The latter left his car running in front of the entrance to KAPOOR's residence and got out of the car. N.A. called KAPOOR. They met in the car to exchange belongings and the video cassettes were not there. KAPOOR took N.A.'s bag, intending to go inside the building. He tried to remove the ignition keys to beg N.A. to follow him inside. N.A. refused. There was a fight to get the car keys back. KAPOOR slapped N.A. on the face when he was near the building. KAPOOR then punched N.A. in the face.

31.     Between July 1999 and the time he retrieved the video cassettes in March 2002, N.A. reports having been a victim of oral sex, masturbation, anal penetration, invitation to sexual touching and assault. The assaults took place at KAPOOR's residence, on avenue de Courtrai. KAPOOR performed sexual acts on N.A. each day that they saw each other. KAPOOR also shaved N.A.'s hair during sexual acts. The majority of assaults occurred during the day, except for 5-6 times where they occurred in the evening. KAPOOR would film the assaults each time. KAPOOR showed N.A. videos of himself and N.A. three or four times. Immediately after having filmed him, KAPOOR showed N.A. the videos, either on the camera or using the television. To get close to N.A. and to get what he wanted, KAPOOR gave N.A. many gifts: money, meals from McDonald's and KFC every day, Gel-pens, a walkman, video games (PlayStation and Sega), clothing, shoes, a gym membership and a cell phone. He had already given N.A. $200. KAPOOR told N.A. that he

wanted to take him to the United States and live with him there, encouraged him to leave his family and told him that he would buy him expensive vehicles. KAPOOR also helped N.A. get credit cards (Zeller, CIBC) by completing forms and changing his date of birth. N.A. concluded saying that he was convinced that all the young people on avenue de Courtrai who went to KAPOOR's residence had suffered sexual touchings.

32.     On January 22, 2003, DS Christine Debon took the written statement of the witness Nadeem Akbar, N.A's friend. He stated that in the summer of 2002, he ran into N.A. at the mosque and that he seemed angry. The next day, N.A. asked to talk to him. They went to the park and N.A. started crying and was unable to talk. He told Nadeem Akbar that he was having trouble with KAPOOR, but he refused to go into details. Over the following week, N.A. disclosed to Nadeem Akbar the sexual abuse, threats and the videos. The day after the disclosure, Nadeem Akbar accompanied N.A. to the residence of KAPOOR to retrieve the video cassettes while the latter was away, in the United States. KAPOOR quickly returned and asked to see N.A. to retrieve his belongings. Nadeem Akbar accompanied N.A. to KAPOOR's residence. At the site, KAPOOR wanted to isolate himself with N.A. in his residence; Nadeem Akbar refused. He said that they were there to give KAPOOR his belongings and fetch N.A.'s belongings. They left and KAPOOR called back 30 minutes later to give N.A. his belongings. Nadeem Akbar left N.A. alone in his vehicle and moved away. He remained some 50 metres from his vehicle. He saw KAPOOR push N.A. into the driver's seat, lie down on top of him and try to kiss him. N.A. pushed him back. The sequence lasted 5 minutes and ended when KAPOOR took the car keys. There was a fight to get the keys back and KAPOOR handed them over when Nadeem Akbar approached the vehicle. Nadeem Akbar kept the video cassettes in his car until they were handed over to DS Christine Debon on January 15, 2003.

33.     On January 22, 2003, N.A. gave DS Christine Debon a list of the home addresses of young boys who visited KAPOOR at 4752, avenue de Courtrai, apt. 2, in Montréal. DS Christine Debon went to the addresses to verify whether there were other victims of KAPOOR. She then went to the residence of T.A., who lived at 4375, avenue de Courtrai, apt. #43, in Montréal. She asked him non-suggestive questions; T.A told her that KAPOOR had pulled down his trousers and touched his penis. An appointment was made for an interview on January 27, 2003.

34.     On January 27, 2003, DS Christine Debon met with victim T.A., who was then 10 years old. A video interview was conducted. T.A. stated that when he was between 5 and 7 years old,

during the summer of 1998, he went to KAPOOR's residence at 4752, avenue de Courtrai, Montréal, where he sat on the sofa to play video games on KAPOOR's PlayStation. He indicated that KAPOOR was living in apartment #1 or #2. KAPOOR touched his buttocks and penis through his clothing. It was the only incident T.A. had experienced. He knows the man only as KAPOOR. He never returned to KAPOOR's residence thereafter. He added that Kapoor had touched many people, but that he never saw him touch anyone else.

35.    On April 15, 2003, DS Guy Bianchi went to a former residence of KAPOOR, at 4357, avenue de Courtrai, apt. #203, in Montréal. He met Saleh Mohammed KAOSER who told him that he had known KAPOOR since 1999. A written statement was taken in which Saleh Mohammed KAOSER stated that he lived with KAPOOR from March 2000 to September 2000. KAPOOR was often with young boys between 10 and 16 years of age. One of his young boys went back to Bangladesh. KAPOOR came to his residence on April 13 or 14, 2003. He left a bag behind before leaving for Brampton, Ontario. KAPOOR asked him to keep the bag. Mr. Kaoser handed the belongings to DS Bianchi saying that he did not want to keep them in his home. DS Bianchi seized the bag without a warrant. Preservation of the things seized was authorized by a judge on April 16, 2003. The bag contained, among other things, 8 VHS cassettes.

36.    On May 6, 2003, DS Guy Bianchi and DS Christine Debon viewed the eight videotapes seized on April 15, 2003. Handwritten notes taken by the investigators described the content of the video cassettes. Cassettes #1, #4 and #7 contained adult pornographic films. Cassettes #2, #3, #5 and #6 contained nothing of relevance. According to the handwritten notes taken by investigator Guy Bianchi, cassette #8 contained the following elements:

- KAPOOR films all of his personal immigration papers (46 documents). The full list is described by DS Bianchi on a handwritten note. Some documents have a photo of KAPOOR.

- In a recording dated December 20, 2001, N.A. (14 years and 11months) is seen in a room and his penis is exposed. He is masturbating and filming himself giving oral sex. The investigators' notes do not specify who receives oral sex.

- On an unknown date, N.A. is seen shaving his anus and KAPOOR performs oral sex on him.

- On December 8, 2000, N.A. (13 years and 11 months) is masturbating and KAPOOR performs oral sex on him.

- On November 9, 2001 (14 years and 10 months), KAPOOR and N.A. are kissing each other. A cell phone is given.

- On September 26, 2001 (14 years and 8 months), N.A. undresses, masturbates and KAPOOR performs oral sex on him. N.A. then performs oral sex on KAPOOR.

DS Guy Bianchi will be in a position to testify that the man who assaulted N.A. is KAPOOR since the image of the man appearing in the video footage matches the photo ID documents filmed at the beginning of the video cassette.

37. Between January 20, 2020 and February 6, 2020, steps were taken to contact the victims/witnesses in the case. Victims N.A., S.S., T.A. and R.S. confirmed their willingness to testify at the trial. DS Guy Bianchi and DS Christine Debon are also available.

38. On December 17, 2019, DS Pascal Fortier, in charge of the follow-up investigation of the KAPOOR warrant received information from the Canada Border Services Agency that the United States believed that it had located KAPOOR and wanted to obtain a copy of his fingerprints. Once the fingerprints were provided, the US authorities confirmed that they matched with those of the individual who had been located. Exhibit C presents KAPOOR's fingerprints.

39. On January 20, 2020, KAPOOR was arrested at Newark Liberty International Airport by Marshals Jackson. He had his passport in the name of Perth DE (1969-12-18). He denied that his name was KAPOOR.

40. Note that the first name of KAPOOR was not always spelled correctly on these official documents. KAPOOR's immigration document in Canada bears the name KAPOOR, Parthasarathi (1973-12-18) while the warrant for his arrest was issued in the name of KAPOOR Parthasarthie (1973-12-18). The fingerprints on the Canadian immigration documents match with KAPOOR, Parthasarathi (1973-12-18). All the documents corresponding to KAPOOR's proof of residence, seized during the searches, bear the name KAPOOR Parthasarathi. Lastly, KAPOOR's file at the Société de l'assurance automobile du Québec (SAAQ) bears the name KAPOOR, Parthasarathi (1973-12-18). Thus, the mandate should have been in the name of KAPOOR, Parthasarathi (1973-12-18). An amendment will be made in court to reflect the correct spelling of his first name.

## CONCLUSION

41. Based on the foregoing, I have reasonable and probable grounds to believe, and I do believe, that KAPOOR, Parthasarathi (1973-12-18) committed the following offences:

- Sexual interference (4 counts), contrary to section 151 of the *Criminal Code* of Canada

- Invitation to sexual touching (2 counts), contrary to section 152 of the *Criminal Code* of Canada

- Sexual assault (4 counts), contrary to section 271(1)(a) of the *Criminal Code* of Canada

- Sexual exploitation, contrary to section 153(1)(b) of the *Criminal Code* of Canada

- Assault, contrary to section 266(a) of the *Criminal Code* of Canada

- Obtain sexual services of a person under 18 years old, contrary to section 212(4) of the *Criminal Code* of Canada

- Making child pornography, contrary to section 163.1(2)(a) of the *Criminal Code* of Canada

- Possession of child pornography, contrary to section 163.1(4)(a) of the *Criminal Code* of Canada.

42. I make this affidavit in support of Canada's request for the extradition of KAPOOR, Parthasarathi from the United States of America to the City of Montreal, in the Province of Quebec, Canada, so that he may be tried for the offences with which he has been charged and for no improper purpose or motive.


**Name:** KAPOOR, Parthasarathi
**Alias:** DE, Perth
**Date of birth:** 1973-12-18
**Gender:** Male
**Place of birth:** India
**Citizenship:** United States Citizen on false identity.
**Description:** Height: 168cm          Weight: 69 kg          Eyes: black
**Hair:** Black
**Marks: None**
**Physical characteristics:** None
**Photograph:** Appended to this document (Exhibit B)
**Fingerprints:** Yes (Exhibit C), taken from the data banks of Canadian Border Services Agency
**Criminal record – Canada**: -

Signed in Montréal, March 5th, 2020

**Detective Pascal Fortier**
**10351 Sherbrooke Est,**
**Montreal, Québec, Canada**
**H1B1B3**

**Sworn before me in Montreal,**
**this 5th day of March 2020**

Côté,  Gilbert

**Last name, first name**
**Commissioner for Oaths**

Gilbert Côté
# 205 767

# EXHIBIT A – WARRANT FOR ARREST

| | |
|---|---|
| **MANDAT D'ARREST** ᴐN | **ᴀRRANT FOR ARREST** |
| CANADA | CANADA |
| PROVINCE DE QUÉBEC | PROVINCE OF QUÉBEC |
| District | District    Montréal |
| Localité **M-03 – 1389** | Locality of  Montréal |
| Dossier | Record    500-01-001683-033 |
| Numéro dossier plaignant | Complainant Record Number   SPVM-25021216002 |
| AUX AGENTS DE LA PAIX DU DISTRICT DE | TO THE PEACE OFFICERS OF THE DISTRICT OF Montréal |

| | |
|---|---|
| Le présent mandat est décerné pour l'arrestation | This warrant is issued for the arrest |
| de | of        **KAPOOR Parthasarthie** |
| né(e) le | born on        1973-12-1ᵼ        1973-12-1ᵼ |
| permis de conduire | driver's licence |
| adresse | address        555 Marcel Laurin #102 |
| | Ville Lasalle Québec |

Me X X

Ci-après appelé le (la) prévenu(e).        Hereinafter called the accused.

ATTENDU QUE le (la) prévenu(e) a été inculpé(e) d'avoir:        Whereas the accused has been charged with:
B

1. Between June 24, 1998 and September 1, 1998 in Montréal, district of Montréal, for a sexual purpose, did touch a part of the body of R.S., a person under the age of fourteen (14) years, committing thereby the indictable offence provided by section 151 of the Criminal Code.

2. Between June 24, 1998 and September 1, 1998 in Montréal, district of Montréal, did commit a sexual assault on R.S., committing thereby the indictable offence provided by section 271(1)a) of the Criminal Code.

3. Between July 1, 1999 and December 31, 2000 in Montréal, district of Montréal, for a sexual purpose, did touch a part of the body of N.A., a person under the age of fourteen (14) years, committing thereby the indictable offence provided by section 151 of the Criminal Code.

4. Between July 1, 1999 and December 31, 2000 in Montréal, district of Montréal, for a sexual purpose, did invite, counsel or incite N.A., a person under the age of fourteen (14) years, to touch him, committing thereby the indictable offence provided by section 152 of the Criminal Code.

.../2

ET ATTENDU QU'il y a des motifs raisonnables de croire qu'il est nécessaire dans l'intérêt public de décerner le présent mandat pour l'arrestation du (de la) prévenu(e) (art. 507(4) C.cr.).

WHEREAS, there are reasonable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of the accused (507(4) of the Criminal Code).

À CES CAUSES, les présentes ont pour objet de vous enjoindre, au nom de Sa Majesté, d'arrêter immédiatement le (la) prévenu(e) et de l'amener devant moi ou tout autre juge de paix du district        afin qu'il(elle) réponde à cette inculpation et soit traité(e) selon la loi

THEREFORE, THIS IS to command you, in Her Majesty's name, forthwith to arrest the accused and to bring him (her) before me, or any other justice for the district of Montréal in order that he (she) plead to this charge and be dealt with according to law.

**31 JAN. 2003**

At Montréal, on   **JEAN-GEORGES LALIBERTÉ**

| | |
|---|---|
| Juge de paix (en majuscules) | Justice (in block letters) |
| Juge de paix | Justice |
| **2. RAPPORTABLE** | **2. RETURNABLE** |

| MANDAT D'ARREST ᵀ ᵀ ᴼᴺ | ᴬRRANT FOR ARREST |
|---|---|
| CANADA | CANADA |
| PROVINCE DE QUÉBEC | PROVINCE OF QUÉBEC |
| District | District   Montréal |
| Localité | Locality of  Montréal |
| Dossier | Record    500-01-001683-033 |
| Numéro dossier plaignant | Complainant Record Number   SPVM-25021216002 |
| AUX AGENTS DE LA PAIX DU DISTRICT DE | TO THE PEACE OFFICERS OF THE DISTRICT OF |
| | Montréal |

| Le présent mandat est décerné pour l'arrestation | This warrant is issued for the arrest |
|---|---|
| de | of        KAPOOR Parthasarthie |
| né(e) le | born on    1973-12-16 |
| permis de conduire | driver's licence |
| adresse | address    555 Marcel Laurin #102 |
| | Ville Lasalle Québec |

Me X X

Ci-après appelé le (la) prévenu(e).                                  Hereinafter called the accused.

ATTENDU QUE le (la) prévenu(e) a été inculpé(e) d'avoir:             Whereas the accused has been charged with:

5.  Between December 31, 2000 and April 30, 2002 in Montréal, district of Montréal, did, for sexual purpose invite, counsel or incite N.A., a young person, to touch him, being in a position of trust or authority towards him or being a person with whom N.A. was in a relationship of dependency, committing thereby the indictable offence provided by section 153(1)b) of the Criminal Code.

6.  Between July 1, 1999 and April 30, 2002 in Montréal, district of Montréal, did commit a sexual assault on N.A., committing thereby the indictable offence provided by section 271(1)a) of the Criminal Code.

7.  Between March 1, 2002 and April 30, 2002 in Montréal, district of Montréal, did commit an assault on N.A., committing thereby the indictable offence provided by section 266a) of the Criminal Code.

8.  Between July 1, 1999 and April 30, 2002 in Montréal, district of Montréal, obtain, for soncideration the sexual services of N.A. (31-12-86), a person  who is under the age of eighteen years, committing thereby the indictable offence provided by section 212(4) of the Criminal Code.

9.  Between July 1, 1999 and April 30, 2002 in Montréal, district of Montréal, did make child pornography, committing thereby the indictable offence provided by section 163.1(2)a) of the Criminal Code.

.../3

| ET ATTENDU QU'il y a des motifs raisonnables de croire qu'il est nécessaire dans l'intérêt public de décerner le présent mandat pour l'arrestation du (de la) prévenu(e) (art. 507(4) C.cr.). | WHEREAS, there are reasonable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of the accused (507(4) of the Criminal Code). |
|---|---|
| À CES CAUSES, les présentes ont pour objet de vous enjoindre, au nom de Sa Majesté, d'arrêter immédiatement le (la) prévenu(e) et de l'amener devant moi ou tout autre juge de paix du district                afin qu'il(elle) réponde à cette inculpation et soit traité(e) selon la loi | THEREFORE, THIS IS to command you, in Her Majesty's name, forthwith to arrest the accused and to bring him (her) before me, or any other justice for the district of Montréal in order that he  (she) plead to this charge and be dealt with according to law. |
| | At Montréal, on ⸤ᵀᴱᴬᴺ⸥ᴼᴾᴼᴿ̶ᵀᴀ.. 3 1 JAN. 2003 |

| _____ | _____ |
|---|---|
| Juge de paix (en majuscules) | Justice (in block letters) |
| _____ | _____ |
| Juge de paix | Justice |
| 2. RAPPORTABLE | 2. RETURNABLE |

MANDAT D'ARREST `     ` ⁀N

CANADA
PROVINCE DE QUÉBEC
District     Montréal
Localité
Dossier
Numéro dossier plaignant
AUX AGENTS DE LA PAIX DU DISTRICT DE

ARRANT FOR ARREST

CANADA
PROVINCE OF QUÉBEC
District     Montréal
Locality of Montréal
Record     500-01-001683-033
Complainant Record Number     SPVM-25021215002
TO THE PEACE OFFICERS OF THE DISTRICT OF
Montréal

Le présent mandat est décerné pour l'arrestation
de
né(e) le
permis de conduire
adresse

This warrant is issued for the arrest
of          **KAPOOR Parthasarthie**
born on     1973-12-18
driver's licence
address     555 Marcel Laurin #102
            Ville Lasalle Québec

Me X X

Ci-après appelé le (la) prévenu(e).

Hereinafter called the accused.

ATTENDU QUE le (la) prévenu(e) a été inculpé(e) d'avoir:

Whereas the accused has been charged with:

10. Between July 1, 1999 and April 30, 2002 in Montréal, district of Montréal, did have in his possession child pornography, committing thereby the indictable offence provided by section 163.1(4)a) of the Criminal Code.

11. Between June 1, 1998 and September 1, 1998 in Montréal, district of Montréal, for a sexual purpose, did touch a part of the body of T.A., a person under the age of fourteen (14) years, committing thereby the indictable offence provided by section 151 of the Criminal Code.

12. Between June 1, 1998 and September 1, 1998 in Montréal, district of Montréal, did commit a sexual assault on T.A., committing thereby the indictable offence provided by section 271(1)a) of the Criminal Code.

13. Between September 1, 2000 and October 8, 2000 in Montréal, district of Montréal, for a sexual purpose, did touch a part of the body of M.A., a person under the age of fourteen (14) years, committing thereby the indictable offence provided by section 151 of the Criminal Code.

14. Between September 1, 2000 and October 8, 2000 in Montréal, district of Montréal, did commit a sexual assault on M.A., committing thereby the indictable offence provided by section 271(1)a) of the Criminal Code.

...../4

ET ATTENDU QU'il y a des motifs raisonnables de croire qu'il est nécessaire dans l'intérêt public de décerner le présent mandat pour l'arrestation du (de la) prévenu(e) (art. 507(4) C.cr.).

À CES CAUSES, les présentes ont pour objet de vous enjoindre, au nom de Sa Majesté, d'arrêter immédiatement le (la) prévenu(s) et de l'amener devant moi ou tout autre juge de paix du district          afin qu'il(elle) réponde à cette inculpation et soit traité(e) selon la loi

WHEREAS, there are reasonable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of the accused (507(4) of the Criminal Code).

THEREFORE, THIS IS to command you, in Her Majesty's name, forthwith to arrest the accused and to bring him (her) before me, or any other justice for the district of Montréal in order that he (she) plead to this charge and be dealt with according to law.

At Montréal, on

_____
Juge de paix (en majuscules)

_____
Juge de paix

**2. RAPPORTABLE**

Justice (in block letters)

_____
Justice

**2. RETURNABLE**

| MANDAT D'ARREST    ON | WARRANT FOR ARREST |
|---|---|
| CANADA | CANADA |
| PROVINCE DE QUÉBEC | PROVINCE OF QUÉBEC |
| District | District    Montréal |
| Localité | Locality of  Montréal |
| Dossier | Record     500-01-001683-033 |
| Numéro dossier plaignant | Complainant Record Number    SPVM-25021216002 |
| AUX AGENTS DE LA PAIX DU DISTRICT DE | TO THE PEACE OFFICERS OF THE DISTRICT OF Montréal |

| | |
|---|---|
| Le présent mandat est décerné pour l'arrestation | This warrant is issued for the arrest |
| de | of         **KAPOOR Parthasarthie** |
| né(e) le | born on       1973-12-18 |
| permis de conduire | driver's licence |
| adresse | address      555 Marcel Laurin #102 |
| | Ville Lasalle Québec |

Me X X

Ci-après appelé le (la) prévenu(e).

Hereinafter called the accused.

ATTENDU QUE le (la) prévenu(e) a été inculpé(e) d'avoir:

Whereas the accused has been charged with:

15. Between September 1, 2002 and January 4, 2003 in Montréal, district of Montréal, for a sexual purpose, did touch a part of the body of S.S., a person under the age of fourteen (14) years, committing thereby the indictable offence provided by section 151 of the Criminal Code.

16. Between September 1, 2002 and January 4, 2003 in Montréal, district of Montréal, for a sexual purpose, did invite, counsel or incite S.S., a person under the age of fourteen (14) years, to touch him, committing thereby the indictable offence provided by section 152 of the Criminal Code.

17. Between September 1, 2002 and January 4, 2003 in Montréal, district of Montréal, did commit a sexual assault on S.S., committing thereby the indictable offence provided by section 271(1)a) of the Criminal Code.

ET ATTENDU QU'il y a des motifs raisonnables de croire qu'il est nécessaire dans l'intérêt public de décerner le présent mandat pour l'arrestation du (de la) prévenu(e) (art. 507(4) C.cr.).

À CES CAUSES, les présentes ont pour objet de vous enjoindre, au nom de Sa Majesté, d'arrêter immédiatement le (la) prévenu(e) et de l'amener devant moi ou tout autre juge de paix du district                     afin qu'il(elle) réponde à cette inculpation et soit traité(e) selon la loi

WHEREAS, there are reasonable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of the accused (507(4) of the Criminal Code).

THEREFORE, THIS IS to command you, in Her Majesty's name, forthwith to arrest the accused and to bring him (her) before me, or any other justice for the district of Montréal in order that he (she) plead to this charge and be dealt with according to law.

At Montréal, on

_____
Juge de paix (en majuscules)

_____
Juge de paix

**2. RAPPORTABLE**

_____
Justice (in block letters)

_____
Justice

**2. RETURNABLE**

## EXHIBIT B – PHOTOGRAPHS







# EXHIBIT C – FINGERPRINTS

ORION

33000 8692945 5

1021190923340234800

| Regional identifier / Identificateur regional | Latent-Latente | Certified-Certifié par | Classifier-Préposé au classement | AFIS-SAI |
|---|---|---|---|---|
| 0998 | | | AUG 20 1998 / Year of Birth - Année de naissance 73 | |

RIGHT / DROITE — Thumb-Pouce, Index, Middle-Médius, Ring-Annulaire, Little-Auriculaire

LEFT / GAUCHE

IF ANY FINGERPRINT IS NOT RECORDED GIVE REASON - IF AMPUTATED, DEFORMED OR INJURED, GIVE DATE
S'IL MANQUE UNE EMPREINTE, DIRE POURQUOI - EN CAS D'AMPUTATION, DE DEFORMATION OU DE BLESSURE, DONNER LA DATE

FOUR FINGERS TAKEN TOGETHER IMPRESSION SIMULTANEE DES QUATRE DOIGTS

LEFT THUMB-POUCE GAUCHE RIGHT THUMB-POUCE DROIT

147

AUG AOUT 17 1998

| Name & Complete Address of Contributing Agency/Dept. / Nom et adresse complète du service ou de l'organisme contributeur | Contributor's No. / N° du contributeur | Signature of Official Taking Fingerprints / Signature du préposé aux empreintes | 15 Date |
|---|---|---|---|
| CIC MONTREAL ADMINISTRATION 1010 RUE ST ANTOINE OUEST 2em ETAGE, MONTREAL, QUEBEC., H3C 1B2 | 3671556 | J. LABRECQUE | Y-A 98 M 07 D-J 15 |

**24** Signature of Person Fingerprinted (full name and address) - Signature de la personne dactyloscopiée (nom au complet et adresse)

पि. एस. कपूर

| 24 Surname-Nom de famille | Given names-Prénoms | 6 FPS NO.-N° FPS |
|---|---|---|
| KAPOOR | PARTHASARATHI | 8692945 |

Other Names, Aliases, Nicknames, Maiden Name, etc - Autres noms, sobriquets, surnoms, nom de jeune fille, etc.

Address-Adresse
4652 DECOUTRAI APP. 56
MONTREAL, QC.
H3W 1A1

Complexion-Teint: MEDIUM

**14** Sex-Sexe: ☒ M ☐ F — Hair-Cheveux: BLACK — **21** Eyes-Yeux: D. BROWN

Occupation-Employer - Emploi-employeur

**17** DOB-D.D.N: 73 Y-A 12 M 18 D-J — **19** Height-Taille (cm): 1,72 — **20** Weight-Poids (kg): 60KG

Peculiarities, marks, scars, tattoos, deformities, etc.
Traits caractéristiques, marques, cicatrices, tatouages, difformités, etc.

**18** Place of Birth (city & province)-Lieu de naissance (ville et province): INDIA

If foreign born, port and date of entry in Canada / Si née à l'étranger, port et date d'arrivée au Canada: PEARSON — Y-A 98 M 1998 D-J 14 — AUG AOUT 13 1998 — 112

☐ Violent / Violente ☐ Suicidal / Suicidaire ☐ Escape Risk / Danger d'évasion

Name and Address of NOK-Nom et adresse du plus proche parent

**16** Race: ☐ White / Blanche ☐ Non White (specify) / Autre (préciser)

[redacted]

This form is the property of International Fingerprinting Services Canada (IFSC) Ltd. ©
Ce formulaire est la propriété du Service d'empreintes digitales internationales du Canada (SEDI) Ltée

