

DISTRICT OF COLUMBIA, ss:

<u>DECLARATION OF KATHERINE C. FENNELL</u>

I, Katherine C. Fennell, declare and say as follows:

1. I am an Attorney-Adviser in the Office of the Legal Adviser, Department of State, Washington, D.C. This office has responsibility for extradition requests within the Department of State, and I am charged with the extradition case of Parthasarathi Kapoor, alias "DE," alias "Perth." I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and Canada are found in the Extradition Treaty between the United States of America and Canada of December 3, 1971, which entered into force on March 22, 1976 (the "1971 Treaty"), the Protocol Amending the Extradition Treaty with Canada of January 11, 1988, which entered into force on November 26, 1991 (the "1988 Protocol"), and the Second Protocol Amending the Extradition Treaty with Canada of January 12, 2001, which entered into force on April 30, 2003 (the "2001 Protocol") (collectively, the "Treaty"). Copies of the 1971 Treaty and the Protocols are attached to this declaration.

3. In accordance with the provisions of the Treaty, the Canadian Embassy has submitted Diplomatic Note 8323, dated March 16, 2020, formally requesting the extradition of Parthasarathi Kapoor. A copy of the Diplomatic Note is attached to this declaration.

4. In accordance with Article 17 of the Treaty, the Government of the United States provides legal representation in its courts for Canada in its extradition requests, and Canada provides legal representation in its courts for extradition requests made by the United States.

5. The offenses for which extradition is sought are extraditable offenses pursuant to Article 2 of the Treaty.

20028064-1

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

I certify That Katherine C. Fennell, whose name is subscribed to the document hereunto annexed, was at the time of subscribing the same Attorney Adviser, Office of the Legal Adviser, Department of State, United States of America, and that full faith and credit are due to her acts as such.

**This certificate is not valid if it is removed or altered in any way whatsoever**

In testimony whereof, I, Michael R. Pompeo, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this thirty-first day of March, 2020.

Issued pursuant to CHXIV, Article of
September, 1789, 1 Stat. 68-
USC 301; 22USC 2651a;
301 USC 1733 et. seq.;
144 RULE 44 Federal Rules
Civil Procedure.

_____
Secretary of State

By _____
Assistant Authentication Officer,
Department of State

-2-

6. Documents submitted by the Government of Canada in support of its extradition request were certified on March 13, 2020, by Richard M. Mills Jr., Chargé d'Affaires at the Embassy of the United States of America in Ottawa, in accordance with Title 18, United States Code, Section 3190. Mr. Mills, at the time of his certification, was the principal diplomatic officer of the United States in Canada.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on March 31, 2020.


_Katherine C Fennell_
KATHERINE C. FENNELL

Attachments:

1. Copy of the Note
2. Copies of Treaty and Protocols



Embassy of Canada          Ambassade du Canada

Note No.8323

The Embassy of Canada presents its compliments to the Department of State and has the honour to request the extradition of Parthasarathi KAPOOR a.k.a. DE a.k.a. Perth, an Indian and permanent resident of Canada since October 17, 2000, born on December 18, 1973 in India. The subject is described as being 168cm in height; weights 69kg; brown eyes and black hair. Photographs and fingerprints of the person sought are appended to the documents submitted in support of the extradition request.

Canada is seeking the extradition of Parthasarathi KAPOOR to stand trial in relation to the alleged following offences:

- Four counts of sexual interference, contrary to section 151 of the *Criminal Code*;

- Two counts of invitation to sexual touching, contrary to section 152 of the *Criminal Code*;

- Four counts of sexual assault, contrary to sections 265(1) and 271(1)(a) of the *Criminal Code*;

- One count of sexual exploitation, contrary to section 153(1)(b) of the *Criminal Code*;

- One count of assault, contrary to section 266(a) of the *Criminal Code*;

...⁄2



-2-

- One count of obtaining sexual service of a person under 18 years old, contrary to section 212(4) of the *Criminal Code*;

- One count of making child pornography, contrary to section 163.1(2)(a) of the *Criminal Code*;

- One count of possession of child pornography, contrary to section 163.1(4)(a) of the *Criminal Code*;

Information/Warrant for arrest No. 500-01-001683-033 was issued on January 31,2003 by Justice of the Peace Jean-Georges Laliberté. There is no statute of limitations in respect of the offences for which the person sought stands charged. The indictable offences are punishable by more than one-year imprisonment.

Parthasarathi KAPOOR was provisionally arrested on January 20, 2020, and is presently detained in the State of New Jersey at a location known to US authorities.

The Prosecuting Attorney is Marie-José Harvey, Prosecutor Director of Criminal and Penal Prosecutions of Quebec. The Detective Sergeant is Pascal Fortier, service de police de Montréal.

The Embassy of Canada avails itself of this opportunity to renew to the Department of State the assurances of its highest consideration.

WASHINGTON, D.C.

March 16, 2020



TREATIES AND OTHER INTERNATIONAL ACTS SERIES 8237

[Reprint of English text only]

# EXTRADITION

Treaty Between the
UNITED STATES OF AMERICA
and CANADA

Signed at Washington December 3, 1971

*and*

Agreement Amending the Treaty
Effected by Exchange of Notes
Signed at Washington June 28 and July 9, 1974



# CANADA

## Extradition

*Treaty signed at Washington December 3, 1971;*
*And agreement amending the treaty*
*Effected by exchange of notes*
*Signed at Washington June 28 and July 9, 1974;*
*Ratification of the treaty, as amended, advised by the Senate of*
*   the United States of America December 1, 1975;*
*Ratified by the President of the United States of America De-*
*   cember 12, 1975;*
*Ratified by Canada February 2, 1976;*
*Ratifications exchanged at Ottawa March 22, 1976;*
*Proclaimed by the President of the United States of America*
*   May 6, 1976;*
*Entered into force March 22, 1976.*

---

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

CONSIDERING THAT:

The Treaty on Extradition between the United States of America and Canada was signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974, the original of which Treaty, as amended, is hereto annexed;

The Senate of the United States of America by its resolution of December 1, 1975, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty, as amended;

The Treaty was ratified by the President of the United States of America on December 12, 1975, in pursuance of the advice and consent of the Senate, and has been duly ratified on the part of Canada;

The respective instruments of ratification were exchanged at Ottawa on March 22, 1976;

It is provided in Article 18 of the Treaty that the Treaty shall enter into force upon the exchange of ratifications;

Now, THEREFORE, I, Gerald R. Ford, President of the United States of America, proclaim and make public the Treaty, as amended,

2

to the end that it shall be observed and fulfilled with good faith on and after March 22, 1976, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

Done at the city of Washington this sixth day of May in the year of our Lord one thousand nine hundred seventy-six [SEAL] and of the Independence of the United States of America the two hundredth.

GERALD R. FORD

By the President:
JOSEPH JOHN SISCO
*Acting Secretary of State*

TIAS 8237

3

TREATY ON EXTRADITION BETWEEN
THE UNITED STATES OF AMERICA
AND CANADA

The United States of America and Canada, desiring to make more effective the cooperation of the two countries in the repression of crime by making provision for the reciprocal extradition of offenders, agree as follows:

4

## ARTICLE 1

Each Contracting Party agrees to extradite to the other, in the circumstances and subject to the conditions described in this Treaty, persons found in its territory who have been charged with, or convicted of, any of the offenses covered by Article 2 of this Treaty committed within the territory of the other, or outside thereof under the conditions specified in Article 3(3) of this Treaty.

## ARTICLE 2

(1)  Persons shall be delivered up according to the provisions of this Treaty for any of the offenses listed in the Schedule annexed to this Treaty, which is an integral part of this Treaty, provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year.

(2)  Extradition shall also be granted for attempts to commit, or conspiracy to commit or being a party to any of the offenses listed in the annexed Schedule.

(3)  Extradition shall also be granted for any offense against a federal law of the United States in which one of the offenses listed in the annexed Schedule, or made extraditable by paragraph (2) of this Article, is a substantial element, even if transporting, transportation, the use of the mails or interstate facilities are also elements of the specific offense.

## ARTICLE 3

(1)  For the purpose of this Treaty the territory of a Contracting Party shall include all territory under the jurisdiction of that Contracting Party, including air space

TIAS 8237

5

and territorial waters and vessels and aircraft registered in
that Contracting Party or aircraft leased without crew to a lessee
who has his principal place of business, or, if the lessee has
no such place of business, his permanent residence in, that
Contracting Party if any such aircraft is in flight, or if any
such vessel is on the high seas when the offense is committed.
For the purposes of this Treaty an aircraft shall be considered
in flight from the moment when power is applied for the purpose
of the take-off until the moment when the landing run ends.

(2)   In a case when offense 23 of the annexed Schedule is
committed on board an aircraft at any time from the moment when
all its external doors are closed following embarkation until
the moment when any such door is opened for disembarkation, such
offense and any other offense covered by Article 2 committed
against passengers or crew of that aircraft in connection with
such offense shall be considered to have been committed within
the territory of a Contracting Party if the aircraft was
registered in that Contracting Party, if the aircraft landed in
the territory of that Contracting Party with the alleged offender
still on board, or if the aircraft was leased without crew to a
lessee who has his principal place of business, or, if the lessee
has no such place of business, his permanent residence in that
Contracting Party.

(3)   When the offense for which extradition has been requested
has been committed outside the territory of the requesting State,
the executive or other appropriate authority of the requested
State shall have the power to grant the extradition if the laws
of the requested State provide for jurisdiction over such an
offense committed in similar circumstances.

6

## ARTICLE 4

(1)  Extradition shall not be granted in any of the following circumstances:

(i)  When the person whose surrender is sought is being proceeded against, or has been tried and discharged or punished in the territory of the requested State for the offense for which his extradition is requested.

(ii) When the prosecution for the offense has become barred by lapse of time according to the laws of the requesting State.

(iii) When the offense in respect of which extradition is requested is of a political character, or the person whose extradition is requested proves that the extradition request has been made for the purpose of trying or punishing him for an offense of the above-mentioned character.  If any question arises as to whether a case comes within the provisions of this subparagraph, the authorities of the Government on which the requisition is made shall decide.

(2)  The provisions of subparagraph (iii) of paragraph (1) of this Article shall not be applicable to the following:

(i)  A kidnapping, murder or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt to commit such an offense with respect to any such person.

(ii) When offense 23 of the annexed Schedule, or an attempt to commit, or a conspiracy to commit, or being a party to the commission of that offense, has been committed  on board an aircraft engaged in commercial services carrying passengers.

7

### ARTICLE 5

If a request for extradition is made under this Treaty for
a person who at the time of such request, or at the time of the
commission of the offense for which extradition is sought, is
under the age of eighteen years and is considered by the
requested State to be one of its residents, the requested State,
upon a determination that extradition would disrupt the social
readjustment and rehabilitation of that person, may recommend
to the requesting State that the request for extradition be
withdrawn, specifying the reasons therefor.

### ARTICLE 6

When the offense for which extradition is requested is
punishable by death under the laws of the requesting State and
the laws of the requested State do not permit such punishment
for that offense, extradition may be refused unless the requesting
State provides such assurances as the requested State considers
sufficient that the death penalty shall not be imposed, or, if
imposed, shall not be executed.

### ARTICLE 7

When the person whose extradition is requested is being
proceeded against or is serving a sentence in the territory of
the requested State for an offense other than that for which
extradition has been requested, his surrender may be deferred
until the conclusion of the proceedings and the full execution
of any punishment he may be or may have been awarded.

8

### ARTICLE 8

The determination that extradition should or should not be granted shall be made in accordance with the law of the requested State and the person whose extradition is sought shall have the right to use all remedies and recourses provided by such law.

### ARTICLE 9

(1)  The request for extradition shall be made through the diplomatic channel.

(2)  The request shall be accompanied by a description of the person sought, a statement of the facts of the case, the text of the laws of the requesting State describing the offense and prescribing the punishment for the offense, and a statement of the law relating to the limitation of the legal proceedings.

(3)  When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested State, would justify his arrest and committal for trial if the offense had been committed there, including evidence proving the person requested is the person to whom the warrant of arrest refers.

(4)  When the request relates to a person already convicted, it must be accompanied by the judgment of conviction and sentence passed against him in the territory of the requesting State, by a statement showing how much of the sentence has not been served, and by evidence proving that the person requested is the person to whom the sentence refers.

TIAS 8237

9

## ARTICLE 10

(1)  Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in its territory or to prove that he is the identical person convicted by the courts of the requesting State.

(2)  The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when, in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada, or when, in the case of a request emanating from the United States, they are authenticated by an officer of the Department of State of the United States and are certified by the principal diplomatic or consular officer of Canada in the United States.

## ARTICLE 11

(1)  In case of urgency a Contracting Party may apply for the provisional arrest of the person sought pending the presentation of the request for extradition through the diplomatic channel. Such application shall contain a description of the person sought, an indication of intention to request the extradition of the person sought and a statement of the existence of a warrant of arrest or a judgment of conviction against that person, and such further information, if any, as would be necessary to justify the issue of a warrant of arrest had the offense been committed, or the person sought been convicted, in the territory of the requested State.

TIAS 8237

**10**

(2)  On receipt of such an application the requested State shall take the necessary steps to secure the arrest of the person claimed.

(3)  A person arrested shall be set at liberty upon the expiration of forty-five days from the date of his arrest pursuant to such application if a request for his extradition accompanied by the documents specified in Article 9 shall not have been received.  This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.


ARTICLE 12

(1)  A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:

(i)  He has left the territory of the requesting State after his extradition and has voluntarily returned to it;

(ii) He has not left the territory of the requesting State within thirty days after being free to do so; or

(iii) The requested State has consented to his detention, trial, punishment for an offense other than that for which extradition was granted or to his extradition to a third State, provided such other offense is covered by Article 2.

(2)  The foregoing shall not apply to offenses committed after the extradition.

11

### ARTICLE 13

(1)  A requested State upon receiving two or more requests for the extradition of the same person either for the same offense, or for different offenses, shall determine to which of the requesting States it will extradite the person sought.

(2)  Among the matters which the requested State may take into consideration are the possibility of a later extradition between the requesting States, the seriousness of each offense, the place where the offense was committed, the dates upon which the requests were received and the provisions of any extradition agreements between the requested State and the other requesting State or States.

### ARTICLE 14

(1)  The requested State shall promptly communicate to the requesting State through the diplomatic channel the decision on the request for extradition.

(2)  If a warrant or order for the extradition of a person sought has been issued by the competent authority and he is not removed from the territory of the requested State within such time as may be prescribed by the laws of that State, he may be set at liberty and the requested State may subsequently refuse to extradite that person for the same offense.

### ARTICLE 15

(1)  To the extent permitted under the law of the requested State and subject to the rights of third parties, which shall be duly respected, all articles acquired as a result of the offense or which may be required as evidence shall, if found, be surrendered to the requesting State if extradition is granted.

TIAS 8237

12

(2)  Subject to the qualifications of paragraph (1) of this Article, the above-mentioned articles shall be returned to the requesting State even if the extradition, having been agreed to, cannot be carried out owing to the death or escape of the person sought.

ARTICLE 16

(1)  The right to transport through the territory of one of the Contracting Parties a person surrendered to the other Contracting Party by a third State shall be granted on request made through the diplomatic channel, provided that conditions are present which would warrant extradition of such person by the State of transit and reasons of public order are not opposed to the transit.

(2)  The Party to which the person has been extradited shall reimburse the Party through whose territory such person is transported for any expenses incurred by the latter in connection with such transportation.

ARTICLE 17

(1)  Expenses related to the transportation of the person sought to the requesting State shall be paid by the requesting State.  The appropriate legal officers of the State in which the extradition proceedings take place shall, by all legal means within their power, assist the requesting State before the respective judges and magistrates.

13

(2)  No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the requested State against the requesting State.

### ARTICLE 18

(1)  This Treaty shall be ratified and the instruments of ratification shall be exchanged at Ottawa as soon as possible.

(2)  This Treaty shall terminate and replace any extradition agreements and provisions on extradition in any other agreement in force between the United States and Canada; except that the crimes listed in such agreements and committed prior to entry into force of this Treaty shall be subject to extradition pursuant to the provisions of such agreements.

(3)  This Treaty shall enter into force upon the exchange of ratifications.[1] It may be terminated by either Contracting Party giving notice of termination to the other Contracting Party at any time and the termination shall be effective six months after the date of receipt of such notice.

---

[1] Mar. 22, 1976.

TIAS 8237

14

IN WITNESS WHEREOF the undersigned, being duly authorized thereto by their respective Governments, have signed this Treaty.

DONE in duplicate, in the English and French languages, each language version being equally authentic, at Washington this third day of December, one thousand nine hundred seventy one.

FOR THE UNITED STATES OF AMERICA:

[¹]

FOR CANADA:

[²]

---

¹ William P. Rogers
² Mitchell Sharp

TIAS 8237

15

## SCHEDULE

1. Murder; assault with intent to commit murder.
2. Manslaughter.
3. Wounding; maiming; or assault occasioning bodily harm.
4. Unlawful throwing or application of any corrosive substances at or upon the person of another.
5. Rape; indecent assault.
6. Unlawful sexual acts with or upon children under the age specified by the laws of both the requesting and requested States.
7. Willful nonsupport or willful abandonment of a minor when such minor is or is likely to be injured or his life is or is likely to be endangered.
8. Kidnapping; child stealing; abduction; false imprisonment.
9. Robbery; assault with intent to steal.
10. Burglary; housebreaking.
11. Larceny, theft or embezzlement.
12. Obtaining property, money or valuable securities by false pretenses or by threat of force or by defrauding the public or any person by deceit or falsehood or other fraudulent means, whether such deceit or falsehood or any fraudulent means would or would not amount to a false pretense.
13. Bribery, including soliciting, offering and accepting.
14. Extortion.

TIAS 8237

16

15. Receiving any money, valuable securities or other property
    knowing the same to have been unlawfully obtained.

16. Fraud by a banker, agent, or by a director or officer of
    any company.

17. Offenses against the laws relating to counterfeiting or
    forgery.

18. Perjury in any proceeding whatsoever.

19. Making a false affidavit or statutory declaration for any
    extrajudicial purpose.

20. Arson.

21. Any act done with intent to endanger the safety of any
    person travelling upon a railway, or in any aircraft or
    vessel or other means of transportation.

22. Piracy, by statute or by law of nations; mutiny or revolt
    on board a vessel against the authority of the captain or
    commander of such vessel.

23. Any unlawful seizure or exercise of control of an aircraft,
    by force or violence or threat of force or violence, or by
    any other form of intimidation, on board such aircraft.

24. Willful injury to property.

25. Offenses against the bankruptcy laws.

26. Offenses against the laws relating to the traffic in,
    production, manufacture, or importation of narcotic drugs,
    Cannabis sativa L., hallucinogenic drugs, amphetamines,
    barbiturates, cocaine and its derivatives.

TIAS 8237

17

27. Use of the mails or other means of communication in
connection with schemes devised or intended to deceive
or defraud the public or for the purpose of obtaining
money or property by false pretenses.

28. Offenses against federal laws relating to the sale or
purchase of securities.

29. Making or having in possession any explosive substance
with intent to endanger life, or to cause severe damage
to property.

30. Obstructing the course of justice in a judicial
proceeding, existing or proposed, by:

a)  dissuading or attempting to dissuade a person by
threats, bribes, or other corrupt means from
giving evidence;

b)  influencing or attempting to influence by threat,
bribes, or other corrupt means a person in his
conduct as a juror; or

c)  accepting a bribe or other corrupt consideration
to abstain from giving evidence or to do or to
refrain from doing anything as a juror.

35

[AMENDING AGREEMENT]

*The Canadian Ambassador to the Secretary of State*



Canadian Embassy                    Ambassade du Canada

Washington, D.C.

June 28, 1974

No. 126

Excellency,

I have the honour to refer to the Treaty on Extra-
dition between the Government of Canada and the Government
of the United States signed at Washington on December 3,
1971 and to subsequent discussions between representatives
of our two governments concerning the amendment of the said
Treaty.

Further to those discussions I now have the honour
to propose that the said Treaty be amended as follows:

(1) That Article 4(2)(i) of the Treaty shall
be amended to read:  "A kidnapping, murder,
or other assault against the life or physical
integrity of a person to whom a Contracting
Party has the duty according to international
law to give special protection, or any attempt
or conspiracy to commit, or being a party to

The Honourable
  Henry A. Kissinger,
    Secretary of State,
      Washington, D.C.
        20520

TIAS 8237

36

the commission of, such an offence with
respect to any such person."

(2) That clause 26 of the Schedule annexed to
the Treaty shall be amended to read:
"Offences against the laws relating to
the traffic in, production, manufacture or
importation of drugs listed in Schedule I
to the Single Convention on Narcotic Drugs
of March 30, 1961[1] and of drugs listed in
Schedules I, II and III to the Convention
on Psychotropic Substances of February 21,
1971."

If this proposal meets with the approval of your
government, I have the further honour to propose that
this Note, which is authentic in English and in French,
and your reply shall constitute an amendment to the Treaty
on Extradition between Canada and the United States referred
to above, which shall come into force on the date of the
entry into force of the said Treaty and which shall be con-
sidered an integral part of the said Treaty.

Accept, Excellency, the assurances of my highest
consideration.

M. Cadieux,
Ambassador.

[1] TIAS 6298; 18 UST 1559.

TIAS 8237

39

*The Secretary of State to the Canadian Ambassador*

DEPARTMENT OF STATE
WASHINGTON

July 9, 1974

Excellency:

I have the honor to refer to your note of June 28, 1974, in the English and French languages, relating to amendment of the Treaty on Extradition between the United States of America and Canada, signed at Washington December 3, 1971.

On behalf of the United States of America I confirm the understanding set forth therein and consider that your note and this reply constitute an agreement between the United States and Canada on this matter.

Accept, Excellency, the renewed assurances of my highest consideration.

For the Secretary of State:

Acting Secretary

*Joseph John Sisco*

His Excellency

Marcel Cadieux,

Ambassador of Canada.

| 101st Congress 2d Session | SENATE | Treaty Doc. 101–17 |
| --- | --- | --- |

# PROTOCOL AMENDING THE EXTRADITION TREATY WITH CANADA

## MESSAGE

### FROM

# THE PRESIDENT OF THE UNITED STATES

#### TRANSMITTING

THE PROTOCOL SIGNED AT OTTAWA ON JANUARY 11, 1988, AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA, SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974



APRIL 24, 1990.—Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

39–118                                          WASHINGTON : 1990

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *April 24, 1990.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Protocol signed at Ottawa on January 11, 1988, amending the Treaty on Extradition Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. I transmit also, for the information of the Senate, the report of the Department of State with respect to the protocol.

The protocol amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. It represents an important step in improving law enforcement cooperation and combatting terrorism by excluding from the scope of the political offense exception serious offenses typically committed by terrorists; e.g., murder, manslaughter, kidnapping, use of an explosive device capable of endangering life or causing grievous bodily harm, and attempt or conspiracy to commit the foregoing offenses.

The protocol also will help to improve implementation of the current extradition treaty in several other respects. Most significant, the protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, *inter alia,* parental child abduction and certain additional narcotics offenses will be covered by the new treaty.

I recommend that the Senate give early and favorable consideration to the protocol and give its advice and consent to ratification.

GEORGE BUSH.

(III)

## LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, April 10, 1990.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Protocol amending the 1971 Extradition Treaty Between the United States of America and Canada signed at Ottawa January 11, 1988. I recommend that the Protocol be transmitted to the Senate for advice and consent to ratification.

The Protocol supplements and amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974 (27 U.S.T. 983; TIAS 8237). The Protocol would exclude specified crimes of violence, typically committed by terrorists, from the scope of the political offense exception to extradition. It therefore represents an important step toward improving law enforcement cooperation and countering the threat of international terrorism and other crimes of violence. In addition, the Protocol will help improve the implementation of the current Treaty in several other respects. Most significantly, the Protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, inter alia, parental child abduction and certain additional narcotics offenses will be covered.

Article 2 of the 1971 Extradition Treaty, as amended, which incorporates a Schedule of extraditable offenses, has been replaced in its entirety. Pursuant to the current Extradition Treaty, only crimes that are listed in the Schedule are considered extraditable offenses. As amended by Article I of the Protocol, Article 2 of the 1971 Treaty, as amended, adopts a dual criminality approach, which emphasizes extradition based on underlying criminal conduct rather than for a particular offense. A dual criminality clause permits extradition for any crime that is punishable in both countries by imprisonment or other detention for at least one year. Inclusion of a dual criminality clause, therefore, obviates the need to renegotiate or supplement the Treaty as offenses, such as computer-related crimes or money laundering, become punishable under the laws of both states.

Article I of the Protocol replaces Article 2 of the 1971 Treaty and provides that an offense is extraditable notwithstanding that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States. This provision will allow the United States to request extradition for offenses including interstate and foreign travel or transportation in aid of racketeering enterprises

(1)

2

even though the Canadian laws do not include analogous jurisdictional elements for similar underlying criminal behavior. The new provision also stipulates that offenses that relate to taxation or revenue or that are of a "purely fiscal character" will be extraditable offenses.

Article II of the Protocol is a technical amendment, deleting the Schedule of extraditable offenses annexed to the 1971 Treaty, as amended, and incorporated by reference in Article 2.

Article III of the Protocol deletes Article 3 of the 1971 Treaty, in which a particularized definition of "territory," which was necessary at that time to cover certain types of hijacking offenses, is no longer necessary, as both the United States and Canada are parties to the Hague Convention for the Suppression of Unlawful Seizure of Aircraft, done at The Hague December 16, 1970, and entered into force October 14, 1971, (Hijacking Convention) (22 U.S.T. 1641; TIAS 7192) and the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, done at Montreal September 23, 1971, and entered into force January 26, 1973, (Sabotage Convention) (24 U.S.T. 564; TIAS 7570).

Article 3(3) of the 1971 Treaty is amended to give the Executive or other appropriate Authority the discretion to extradite fugitives when the requesting state has jurisdiction over an offense in a situation where the laws of the requested state would not provide for jurisdiction in similar circumstances.

Article IV of the Protocol replaces Article 4 of the 1971 Treaty, and effectively limits the scope of the political offense exception. It specifies certain crimes which shall not be regarded as political offenses, including murder, manslaughter, malicious assault, kidnapping, specified explosives offenses, and conspiracy or attempt to commit any of the foregoing offenses.

In addition, Article IV of the Protocol includes a provision that excludes from the reach of the political offense exception any offense for which both the United States and Canada have an international treaty obligation to extradite the person or submit his case for prosecution; e.g., aircraft hijacking pursuant to the Hijacking Convention; aircraft sabotage pursuant to the Sabotage Convention; crimes against internationally protected persons, including diplomats, under the Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, including Diplomatic Agents, done at New York December 14, 1973 (28 U.S.T. 1975; TIAS 8532); and hostage taking pursuant to the International Convention against the Taking of Hostages, done at New York on December 17, 1979. This exception will also extend to crimes similarly defined in future multilateral treaties.

Article V of the Protocol replaces Article 7 of the 1971 Extradition Treaty, which allows the Requested State to defer surrender of a fugitive being proceeded against or serving a sentence in its territory until the conclusion of the proceedings and the full execution of any punishment. Under the Protocol, the Requested State has the discretion to choose to extradite to the Requesting State a fugitive who is serving a prison sentence in the Requested State before the expiration of his sentence. This alternative of temporary surrender is routinely included in our modern extradition treaties.

Article VI of the Protocol replaces Article 11(3) of the current Treaty to extend the period of provisional arrest in the Requested State from forty-five days to sixty days, which is the time period most commonly provided under U.S. extradition treaties. The extension will allow prosecutors greater latitude in assembling extradition packages and in making necessary adjustments or additions to the documents.

Article VII of the Protocol amends the 1971 Treaty by adding a provision that establishes that, in cases where both states have jurisdiction to prosecute for an offense, the Executive Authority of the Requested State will consult with the Executive Authority of the Requesting State and make a decision whether to extradite the fugitive, or whether to submit the case to its competent authorities for the purpose of prosecution, after considering all relevant factors.

Article VIII of the Protocol provides that its provisions shall apply to any offense committed, any request made or any person found extraditable before or after the entry into force of the Protocol, but shall not apply to an offense committed before the Protocol enters into force if the offense in question was not an offense under the laws of both Contracting Parties at the time of its commission.

Article IX of the Protocol sets forth the procedures for ratification and entry into force.

I enclose, for the information of the Senate, an exchange of letters, dated January 11, 1988, which restates that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters," is an extraditable offense under the 1971 Extradition Treaty.

The Department of Justice joins the Department of State in favoring transmission of this Protocol to the Senate at the earliest possible date.

Respectfully submitted,

JAMES W. BAKER III.

Enclosure: As stated.

THE SECRETARY OF STATE,
Washington, January 11, 1988.

Hon. JOE CLARK, P.C., M.P.,
Secretary of State for External Affairs of Canada, Ottawa.

DEAR MR. MINISTER: I refer to the Protocol Amending the Treaty on Extradition between the United States and Canada we signed today and have the honor to address to you the following.

The United States and Canada recognize that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters", is an extraditable offense under the United States-Canada Extradition Treaty.

Where a person has been charged with or convicted of such an offense in Canada and is found within the jurisdiction of the United States, the United States agrees, upon request, to commence extradition proceedings against such a person pursuant to the Treaty in order that the person may be returned to Canada.

The United States will use its best efforts to honor Canadian requests for testimony, information, or other assistance pertaining to such abductions.

Canada and the United States agree to cooperate to deter such transborder abductions. To assist in achieving that purpose, the United States will continue to exert its best efforts to inform those engaged in business as bail bondsmen or bounty hunters and other interested parties of the positions set forth in this exchange of letters.

Canada and the United States agree to consult promptly concerning any case of transborder abduction involving bounty hunters which might arise in the future. The purpose of such consultations shall be to address matters relating to any such case, including any request by the Government of Canada for the return of the person so abducted. In the event of return, the Governments agree to cooperate to have the abducted person escorted to Canada and taken into custody at the border, pursuant to a request for provisional arrest, pending the outcome of extradition proceedings. For the purpose of these consultations, the principal law enforcement contact for the United States will be the Director of the Office of International Affairs of the Criminal Division of the Department of Justice.

I have the honor to propose that this letter and your reply constitute an understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Sincerely yours,

GEORGE P. SHULTZ

OTTAWA, *January 11, 1988.*

JLA-0026.
Hon. GEORGE P. SHULTZ,
*Secretary of State of the United States of America.*

DEAR MR. SECRETARY: I have the honour to acknowledge receipt of your letter of today's date concerning transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters". I accept your proposal that your letter and this reply constitute an Understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Yours sincerely,

JOE CLARK.

PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974

The Government of the United States of America and the Government of Canada;

Desiring to make more effective the Extradition Treaty between the Contracting Parties, signed at Washington on December 3, 1971, as amended by the agreement effected by an Exchange of Notes on June 28 and July 9, 1974 (hereinafter referred to as "the Extradition Treaty");

Have agreed as follows:

## ARTICLE I

Article 2 of the Extradition Treaty is deleted and replaced by the following:

## ARTICLE 2

"(1) Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.

"(2) An offense is extraditable notwithstanding

"(i) that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States, or

"(ii) that it relates to taxation or revenue or is one of a purely fiscal character."

## ARTICLE II

The SCHEDULE to the Extradition Treaty, as amended, is deleted.

## ARTICLE III

Paragraph (2) of Article 3 of the Extradition Treaty is deleted. Paragraph (3) of Article 3 of the Extradition Treaty is amended to read as follows:

"(2) When the offense for which extradition is requested was committed outside the territory of the requesting State, the executive or other appropriate authority of the requested State shall grant extradition if the laws of the requested State provide for jurisdiction over such an offense committed in similar circumstances. If the laws in the requested State do not so provide, the executive

(5)

6

authority in the requested State may, in its discretion, grant extradition."

### ARTICLE IV

Paragraph (2) of Article 4 of the Extradition Treaty, as amended, is deleted and replaced by the following:

"(2) For the purpose of this Treaty, the following offenses shall be deemed not to be offenses within subparagraph (iii) of paragraph 1 of this Article:

"(i) An offense for which each Contracting Party has the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to its competent authorities for the purpose of prosecution;

"(ii) Murder, manslaughter or other culpable homicide, malicious wounding or inflicting grievous bodily harm;

"(iii) An offense involving kidnapping, abduction, or any form of unlawful detention, including taking a hostage;

"(iv) An offense involving the placing or use of explosives, incendiaries or destructive devices or substances capable of endangering life or of causing grievous bodily harm or substantial property damage; and

"(v) An attempt or conspiracy to commit, or counselling the commission of, any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses."

### ARTICLE V

Article 7 of the Extradition Treaty is deleted and replaced by the following:

### "ARTICLE 7

"When the person sought is being proceeded against or is serving a sentence in the requested State for an offense other than that for which extradition is requested, the requested State may surrender the person sought or postpone surrender until the conclusion of the proceedings or the service of the whole or any part of the sentence imposed."

### ARTICLE VI

Paragraph (3) of Article 11 of the Extradition Treaty is deleted and replaced by the following:

"(3) A person arrested shall be set at liberty upon the expiration of sixty days from the date of arrest pursuant to such application if a request for extradition and the documents specified in Article 9 have not been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request and documents are subsequently received."

### ARTICLE VII

The Extradition Treaty is amended by adding the following after Article 17:

7

### "ARTICLE 17 BIS

"If both contracting Parties have jurisdiction to prosecute the person for the offense for which extradition is sought, the executive authority of the requested State, after consulting with the executive authority of the requesting State, shall decide whether to extradite the person or to submit the case to its competent authorities for the purpose of prosecution. In making its decision, the requested State shall consider all relevant factors, including but not limited to:

"(i) the place where the act was committed or intended to be committed or the injury occurred or was intended to occur;

"(ii) the respective interests of the Contracting Parties;

"(iii) the nationality of the victim or the intended victim; and

"(iv) the availability and location of the evidence."

### ARTICLE VIII

Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date.

### , ARTICLE IX

(1) This Protocol shall be subject to ratification in accordance with the applicable procedures of the Government of the United States and the Government of Canada and instruments of ratification shall be exchanged as soon as possible.

(2) The Protocol shall enter into force upon the exchange of instruments of ratification.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

DONE in duplicate at Ottawa, this 11th day of January 1988, in the English and French languages, the two texts being equally authentic.

For the Government of the United States of America.

GEORGE P. SHULTZ.

For the Government of Canada.

JOE CLARK.

O

| 107TH CONGRESS 2d Session | SENATE | TREATY DOC. 107–11 |
|---|---|---|

# SECOND PROTOCOL AMENDING EXTRADITION TREATY WITH CANADA

---

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

SECOND PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF CANADA, SIGNED AT OTTAWA ON JANUARY 12, 2001



JULY 11, 2002.—The Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

---

U.S. GOVERNMENT PRINTING OFFICE

WASHINGTON : 2002

99–118

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *July 11, 2002.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Second Protocol Amending the Treaty on Extradition Between the Government of the United States of America and the Government of Canada, as amended, signed at Ottawa on January 12, 2001. In addition, I transmit, for the information of the Senate, the report of the Department of State with respect to the Second Protocol. As the report explains, the Second Protocol will not require implementing legislation.

The Second Protocol amends the Extradition Treaty Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an Exchange of Notes of June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988.

The Second Protocol, upon entry into force, will enhance cooperation between the law enforcement communities of both nations. The Second Protocol incorporates into the U.S.-Canada Extradition Treaty a provision on temporary surrender of persons that is a standard provision in more recent U.S. bilateral extradition treaties. It also provides for new authentication requirements of documentary evidence, which should streamline the processing of extradition requests.

I recommend that the Senate give early and favorable consideration to the Second Protocol and give its advice and consent to ratification.

GEORGE W. BUSH.

(III)

# LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, May 31, 2002.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Second Protocol Amending the Treaty on Extradition Between the Government of the United States of America and the Government of Canada, signed at Ottawa on January 12, 2001 ("Second Protocol"). I recommend that the Second Protocol be transmitted to the Senate for its advice and consent to ratification.

The Second Protocol will strengthen the U.S.-Canada extradition relationship by incorporating a temporary surrender mechanism into the Extradition Treaty Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an Exchange of Notes of June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988 ("Extradition Treaty"). The Second Protocol will also streamline the extradition process by modifying the Extradition Treaty's authentication requirements relating to the admissibility of documentary evidence.

A temporary surrender mechanism has become a standard provision in more recent U.S. bilateral extradition treaties. It allows person who have been found extraditable to be temporarily surrendered to one State to stand trial while they are still serving sentences in the other State. Temporary surrender can be an important tool for use in cases where serious crimes have been committed in one country which might go unpunished if trial in that country were to be delayed for a long period while a sentence was being served for crimes committed in the other country. It enables sequential trials of individuals who have committed extraditable offenses in both countries at a time when witnesses and evidence to both crimes are more readily available.

Article 1 of the Second Protocol amends the Extradition Treaty to provide for a new Article 7bis, which will follow Article 7's existing provisions authorizing the State in receipt of an extradition request ("requested State") to delay surrender until after proceedings against a person in that State have been completed or the person's sentence in that State has been served.

New article 7bis(1) provides that if the requested State has granted an extradition request in accordance with the Treaty with respect to a person who already has been convicted and sentenced in the requested State, it may temporarily surrender the person to the requesting State for prosecution. It further provides that the courts of the requested State must not be divested by virtue of the temporary surrender of jurisdiction over any appeal or habeas cor-

(V)

VI

pus application relating to the conviction or sentence in the requested State.

Article 7bis(2) provides that the person surrendered pursuant to paragraph (1) must be kept in custody in the requesting State. It also provides that the person must be returned to the requested State within forty-five days after the conclusion of the proceedings for which the person's presence was required or at another time as specified by the requested State, in accordance with conditions determined by the Parties. This provision anticipates that authorities in the United States and Canada, which in some cases will include state-level authorities, will consult to determine appropriate conditions for the temporary surrender of an individual, including arrangements for the transfer and return of the prisoner, as well as any extraordinary matters that may be relevant, such as medical care requirements. Consistent with our normal extradition practice, any case-specific agreements or assurances relating to the temporary surrender would be concluded by the federal authorities on behalf of state authorities. Similar to the language in paragraph (1), Article 7bis(2) also provides that the transfer of the person back to the requested State will not divest the courts of the requesting State of jurisdiction over any appeal or habeas corpus application relating to the matter for which the prisoner was temporarily surrendered.

Article 7bis(3) provides that the time spent in custody in the requesting State may be credited to the sentence in the requested State. In the case of the United States, credit for time served by a person surrendered to Canadian authorities may differ among U.S. state and federal authorities.

Article 7bis(4) provides that the requested State can waive the return of the surrendered person in the event the person's sentence in the requested State expires during the temporary surrender period. Article 7bis(4) provides that in such cases the person's surrender shall be considered a "final surrender" under the Extradition Treaty.

Because temporary surrender is contingent on a grant of extradition, Article 7bis(5) provides that the requesting State does not have to make a further request for the extradition of a person who has been returned to the requested State after having been convicted and sentenced in the requesting State for the offense for which temporary surrender was granted.

Article 7bis(6) provides that a person who has been returned to the requested State, after having been convicted and sentenced during a temporary surrender, must be finally surrendered once the custodial portion of the person's sentence in the requested State has been completed or, if the requested State so specifies, at an earlier time. This provision contemplates that the requested State will finally surrender a person who has been released on parole or under other conditions. It also envisions that the requested State may choose to surrender the person at an earlier time.

Article 7bis(7) recognizes that there may be reasons not to proceed with final surrender even though the person was convicted and sentenced during a temporary surrender. Article 7bis(7) (a) provides that final surrender will not take place when the requesting State advises that it is no longer required because the sentence

VII

imposed in the requesting State has expired or for other reasons. Similarly, Article 7bis(7) (b) provides that the person will not be surrendered to the requesting State in the event the competent authority of the requested State revokes its original grant of extradition.

Article 2 of the Second Protocol will establish a new framework for the admissibility of documentary evidence in support of a request for extradition by replacing existing Article 10(2) of the Extradition Treaty.

Consistent with U.S. extradition law on the admissibility of documentation, new Article 10(2)(a) reiterates the existing requirement that, in the case of a request from Canada, documents be authenticated by an officer of the Department of Justice of Canada and certified by the principal diplomatic or consular office of the United States in Canada. Article 10(2)(b), however, changes existing requirements with respect to requests emanating from the United States, so as to take advantage of changes in Canadian law regarding the admissibility of extradition documents in Canadian courts. Specifically, Article 10(2)(b) eliminates the requirement that the United States have its documentary evidence in support of extradition requests to Canada authenticated by an officer of the U.S. Department of State and certified by the principal diplomatic or consular officer of Canada in the United States. Instead, Article 10(2) (b) streamlines the authentication process by allowing documents to be certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction. When the person whose extradition is sought has already been convicted, documents supporting the U.S. request are to be certified by a judicial, prosecuting or correctional authority who can attest to the fact that the documents are accurate. These changes should simplify and thereby reduce the administrative burden of processing extradition requests by the United States.

New Article 10(2) (c) provides an alternative to subparagraphs (a) and (b), by providing that documents may also be certified or authenticated in any other manner accepted by the law of the requested State. This addition will enable both countries to take advantage of any changes to their applicable laws.

Article 3 of the Second Protocol addresses the relationship between the Second Protocol and the Extradition Treaty. Paragraph (1) provides that the Second Protocol will form an integral part of the Extradition Treaty. Paragraph (2) provides for retroactivity, noting that, notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, the Second Protocol will apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date. Finally, paragraph (3) provides that the Second Protocol is subject to ratification, and enters into force upon the exchange of instruments of ratification. The Second Protocol would terminate upon termination of the Extradition Treaty.

The Second Protocol does not require implementing legislation. A Technical Analysis explaining in detail the provisions of the Second Protocol is being prepared by the United States negotiating delegation, consisting of the Departments of State and Justice, and will

VIII

be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Second Protocol by the Senate at an early date.

Respectfully submitted,

COLIN L. POWELL.

SECOND PROTOCOL AMENDING THE TREATY ON EXTRADITION

BETWEEN

THE GOVERNMENT OF THE UNITED STATES OF AMERICA

AND

THE GOVERNEMENT OF CANADA


Signed at Washington on December 3, 1971,
as amended by an Exchange of Notes at Washington on June 28 and July 9, 1974,
and by a Protocol signed at Ottawa on January 11, 1988


THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND
THE GOVERNMENT OF CANADA (hereinafter "the Parties");

RECOGNIZING the close bilateral relationship which exists between them,
reflected in numerous instruments and mechanisms of legal cooperation;

COMMITTED to strengthening legal cooperation in the fight against crime;
and

DESIRING to make more effective the Extradition Treaty between the Parties,
signed at Washington on December 3, 1971 (hereinafter "the Extradition Treaty"), as
amended by an exchange of notes of June 28 and July 9, 1974, and the Protocol to the
Extradition Treaty between the Parties, signed at Ottawa on January 11, 1988
(hereinafter "the Protocol");

HAVE AGREED as follows;


ARTICLE 1

The Extradition Treaty is amended by adding the following after Article 7:

"Article 7 bis

1.      The requested State, after granting an extradition request made in accordance
with the Extradition Treaty, may temporarily surrender a person who has been
convicted and sentenced in the requested State, in order that the person sought may be
prosecuted in the requesting State. The temporary surrender of the person shall not
divest the Courts in the requested State of jurisdiction over any appeal or habeas corpus
application relating to the conviction or sentence that otherwise may be available under
the laws of the requested State.

(1)

2

2.    A person temporarily surrendered pursuant to paragraph 1 shall be kept in custody in the requesting State. The person shall be returned to the requested State within forty-five (45) days after the conclusion of the proceedings for which the person's presence was required in the requesting State or at another time as specified by the requested State, in accordance with conditions to be determined by the Parties for that purpose.   The return of the person to the requested State shall not divest the Courts in the requesting State of jurisdiction over any appeal or habeas corpus application that otherwise may be available under the laws of that State, in relation to the matter for which the person was temporarily surrendered.

3.    The period of time spent in custody in the requesting State may be credited to the sentence in the requested State.

4.    : When the sentence that the person was serving in the requested State expires during the temporary surrender, the requested State may waive the return of the person and the surrender will be considered to be a final surrender.  A "final surrender" is a surrender of a person pursuant to this Treaty other than as provided for by this Article.

5.    :Subject to paragraph 7, if a person temporarily surrendered and returned to the requested State has been sentenced to imprisonment in the requesting State for the offence for which the person was temporarily surrendered, the person shall be finally surrendered to the requesting State, in accordance with paragraph 6, without a further request for extradition.

6.    Final surrender shall take place when the person has finished serving the custodial portion of the sentence in the requested State, or at an earlier time specified by the requested State.

7.    Final surrender shall not take place when:

   (a)    the requesting State advises that final surrender is no longer required due to the expiration of the sentence imposed or for other reasons; or

   (b)    after the temporary surrender, the warrant or order for the final surrender of a person sought is revoked by the competent authority of the requested State."

## ARTICLE 2

Article 10(2) of the Extradition Treaty is deleted and replaced by the following text:

"(2)   The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when:

   (a)    in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada;

3

(b)   in the case of a request emanating from the United States for a person who is sought for prosecution, they are certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction.  In the case of a request emanating from the United States for a person who is sought in connection with a conviction, the documents must be certified by a judicial, prosecuting or correctional authority who attests to the fact that the documents are accurate; or

(c)   they are certified or authenticated in any other manner accepted by the law of the requested State."

## ARTICLE 3

1.     This Second Protocol shall form an integral part of the Extradition Treaty.

2.     Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Second Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offence was committed before or after that date.

3.     This Second Protocol shall be subject to ratification, and shall enter into force upon the exchange of instruments of ratification.  It shall terminate upon termination of the Extradition Treaty.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Second Protocol.

DONE in duplicate at Ottawa this Twelfth day of January 2001 in the English and French languages, the two texts being equally authentic.

FOR THE GOVERNMENT OF
THE UNITED STATES OF
AMERICA

FOR THE GOVERNMENT
OF CANADA