**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF DARIUSZ ADAM CZERECH | **Mag. No. 19-6763** |
|  | **OPINION** |

**FALK, U.S.M.J.**

Before the Court is the Government's application for the extradition of Dariusz Adam Czerech ("Czerech") to Poland pursuant to 18 U.S.C. § 3184[1] and the Extradition Treaty between the United States of America and Poland of July 10, 1996.

On February 26, 2009, the Regional Court in Bialystok, Poland issued an order for Czerech's detention, arising out of charges relating to a rape that occurred in Poland in 2001, prior to Czerech emigrating to the United States. On September 6, 2009, the Honorable Joseph

---

[1] 18 U.S.C. § 3184 provides that:

> If, on such hearing, [the magistrate judge] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

1

A. Dickson, U.S.M.J. issued an arrest warrant for Czerech, pursuant to a request from the government of the Republic of Poland.  On September 10, 2019, Czerech was arrested and remains in the custody of the United States Marshal.  The United States now makes this application for his extradition to Poland.

The Court has considered the papers in support of and in opposition to the request and conducted a hearing on January 31, 2020.  For the reasons set forth below, and those stated on the record during the extradition proceeding, the Government's application is **GRANTED**.

## ALLEGATIONS[2]

According to the evidence Poland has submitted, Czerech is alleged to have committed the offense of rape.  On July 12, 2001, Czerech and another male, Marek Milweski, met two females, identified as "Victim-1" and "Friend-1," outside a nightclub in Bialystok, Poland.  During the evening, Defendant allegedly identified himself as "Darek," and Milewski introduced himself as "Marek."  Czerech mentioned that he was emigrating to the United States in a month.

Sometime after midnight, Victim-1, Friend-1, Czerech, Milewski, and a third male, Rafal Zakrzewski ("Zakrzewski"), left the club and drove in Zakrzewski's car, which Milewski was driving, to a reservoir on the outskirts of town.  At the reservoir, Czerech and Friend-1 went swimming, and Marek spoke with Victim-1.  After swimming, everyone got in the car and they

---

[2] These allegations are drawn from the Complaint and materials submitted by the Polish Government in support of extradition; specifically, the "Request for Temporary Detention and Extradition" (the "RTDE") prepared by Tadeusz Marek, District Prosecutor in Poland, which is attached as Exhibit 1 to the Government's submission.  (*See* Ex. 1 at CZERECH-0021 to CZERECH-0025.)  This Court must accept this information as true in the context of this extradition application.  See, e.g., In re Extradition of Atta, 706 F. Supp. 1032, 1050-51 (E.D.N.Y. 1989) (citing Collins v. Loisel, 259 U.S. 309, 315-16 (1922)).

drove Friend-1 home.  Victim-1 was left in the car with the three men, who said they would drive her home.

As they were driving Victim-1 home, it is alleged that Czerech became aggressive and attempted to kiss Victim-1, who refused.  Victim-1 requested to be let out of the car.  The three men did not let her out of the car; instead, at Czerech's instruction, the driver turned the car onto a forest path.  Everyone got out of the car.  Czerech then told Victim-1 that he would not drive her home unless she performed a sex act on him.  She refused.  Thereafter, the allegation is that Czerech and Zakrzewski dragged Victim-1 into the forest; she tried to escape but Zakrzewski slapped her in the face.  Czerech then raped Victim-1 in different ways.  Zakrewski did the same, alternating positions with Czerech.  This continued for approximately 90 minutes.  When they were done, they put Victim-1 back in the car and drove her to a roundabout by a public square, where she got out.

Victim-1 memorized a portion of the car's registration number.[3]  Victim-1 also recalled that Czerech had certain tattoos – specifically, two on the internal part of his forearm depicting two spiders, and one on the left side of the abdomen, near the hip, depicting a clef.  Victim-1 relayed the information to her sister and a friend, and the Polish police.  Victim-1 and Friend-1 both identified Milewski and Zakrzewski in separate photo arrays.

Polish police interviewed Milewski, who stated that he saw Czerech and Zakrzewski engaging in simultaneous sex acts with Victim-1; that the Victim-1 was disheveled and crying; and that Czerech and Zakrzewski both admitted to him that they had forced Victim-1 to engage

---

[3]  At the extradition hearing, it was agreed that the car's registration number is akin to a license plate number in the United States.  (*See* Transcript of Extradition Hearing 23:7-12.)

3

in sexual intercourse.

In 2001, Polish authorities charged Zakrzewski with raping Victim-1. He pled guilty and stated that he committed the crime because he was drunk and Czerech encouraged him to participate. He was sentenced to four years imprisonment.

In addition, Milewski and Zakrzewski both identified Czerech as the third male with them on the night in question, and as the second rapist of Victim-1.

On September 10, 2019, the U.S. Marshals Service arrested Czerech and confirmed that he has tattoos depicting two black insects on his right inner forearm and a clef on the left side of his abdomen.

## ANALYSIS

### 1.   Extradition

Extradition proceedings are *sui generis*.  See, e.g., In re Extradition of Kirby, 106 F.3d 855, 867 (9th Cir. 1996).  Different from a criminal proceeding, an extradition hearing is considered "administrative in character" and is governed by statute and treaty.  Id.; see 18 U.S.C. §§ 3181-84.  The limited purpose of an extradition proceeding is generally to determine "whether there is probable cause to believe that the defendant is guilty of the crimes charged.  If the evidence is sufficient, the court makes a finding of extraditability and certifies the case to the Secretary of State."  Sidali v. I.N.S., 107 F.3d 191, 195 (3d Cir. 1997).

To issue a certificate of extradition, the Court's inquiry is focused on the following:

> (1)    whether there is an applicable extradition treaty between the requesting country and the requested country that is in full force and effect;
> (2)    whether there are charges pending against the proposed extraditee in the requesting country;

4

(3)      whether the treaty authorizes the extradition for the crime alleged to have been committed; and

(4)      whether there is competent legal evidence to support a finding of probable cause as to the charge for which the extradition is sought.

See In re Extradition of Aquino, 697 F. Supp. 2d 586, 595 (D.N.J. 2010); In re Extradition of Magdalena Bolanos, 594 F. Supp. 2d 515, 518 (D.N.J. 2009) (citing Bingham v. Bradley, 241 U.S. 511, 516-17 (1916)).

Czerech challenges only the fourth element necessary for extradition—namely, whether the evidence produced by the Government supports a finding of probable cause.  Nonetheless, for purposes of completeness, all four factors are addressed.

**(a)      Applicable Treaty**

The treaty at issue is the July 10, 1996 treaty between the United States of America and Poland, as amended.[4]  The Government has provided a declaration from Michael N. Jacobsohn, an attorney in the Office of the Legal Advisor for the Department of State, certifying that the Treaty is in full force and effect.  Moreover, Czerech does not challenge that the Treaty is enforceable and applicable; therefore, this factor is satisfied.

**(b)      Charges Pending**

The documents submitted by the Government demonstrate that Czerech has been charged with the offense of rape, in violation of Article 197 of the Polish Criminal Code.  Moreover, at

---

[4] See Extradition Treaty Between the United States of America and the Republic of Poland (the "1996 Treaty"), U.S.-Pol., July 10, 1996, S. TREATY DOC. NO. 105-13 (1997), as supplemented by the Agreement Between the United States of America and the Republic of Poland on the application of the Extradition Treaty Between the United States of America and the Republic of Poland signed 10 July 1996 (the "Agreement," with Annex), U.S.-Pol., June 9, 2006, S. TREATY DOC. NO. 109-14 (2006) (collectively, the "Treaty").

the hearing it was confirmed that the charges against Czerech are, in fact, pending.  (*See* Tr. 22:11-23:6.)

### (c)    Terms of the Treaty

The next step is to determine whether the offense at issue falls within the scope of the Treaty and whether the alleged act is illegal in both countries.  See, e.g., Quinn v. Robinson, 783 F.2d 776, 783 (9th Cir. 1986) ("Under the doctrine of 'dual criminality' an accused person can be extradited only if the conduct complained of is considered criminal by the jurisprudence or under the law of both the requesting and requested nations").  Here, the documents submitted by the requesting state establish that Czerech has been charged in Poland with the crime of rape. Under the Treaty applicable here, the offense charged is clearly extraditable.

### (d)    Probable Cause

The Court must now determine whether the evidence presented is sufficient to sustain the charge.  See, e.g., Sidali, 107 F.3d at 195.  "In essence, the court must analyze if there is probable cause to believe that the individual committed acts alleged in the extradition request." Spatola v. United States, 925 F.2d 615, 618 (3d Cir. 1991).  Because of the unique nature of an extradition proceeding, the Court's determination does not require an adjudication of guilt or innocence,[5] a determination of whether the evidence is sufficient to justify a conviction,[6] or a

---

[5] See, e.g., Collins, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.").

[6] See, e.g., Peters v. Egnor, 888 F.2d 713, 717 (10th Cir. 1989) (citing to Collins, 259 U.S. at 316); United States v. Fernandez-Morris, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999).

prediction of whether the Polish courts will convict Czerech.  See generally Benson v. McMahon, 127 U.S. 457, 463 (1888).[7]  Moreover, the Federal Rules of Criminal Procedure and Federal Rules of Evidence do not apply to extradition hearings.  See Fed. R. Crim. P. 54(b)(5); Fed. R. Evid. 1101(d)(3).[8]  Rather, as the Government points out, "unique rules of 'wide latitude,' govern reception of evidence in Section 3184 hearings," Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969), with hearsay evidence permitted.  See In re A.M., 34 F.3d 153, 161 (3d Cir. 1994).

The probable cause standard applicable in extradition proceedings is the same as the standard used in federal preliminary hearings.  See Hoxha v. Levi, 465 F.3d 554, 561 (3d Cir. 2006).  To satisfy this standard, the government requesting extradition has the burden of producing evidence sufficient to give the Magistrate Judge "reasonable ground to believe" the accused committed the offense charged.  Quinn, 783 F.2d at 790; see also Ahmad v. Wigen, 910 F.2d 1063, 1066 (2d Cir.1990).  This is a relatively modest standard that requires the Court consider "the totality of the circumstances" involved.  Illinois v. Gates, 462 U.S. 213, 238

---

[7] ("We are not sitting in this court on the trial of the prisoner, with power to pronounce him guilty and punish him or declare him innocent and acquit him. We are now engaged simply in an inquiry as to whether, under the construction of the act of congress and the treaty entered into between this country and Mexico, there was legal evidence before the commissioner to justify him in exercising his power to commit the person accused to custody to await the requisition of the Mexican government.")

[8] See generally U.S. ex rel. Eatessami v. Marasco, 275 F. Supp. 492, 494 (S.D.N.Y. 1967) ("The federal courts have always recognized that an extradition magistrate [judge] need not be bound by the specific rules of evidence or rules governing the admissibility of evidence in such proceedings as these. Similarly, an extradition magistrate [judge] need not be concerned about acting only upon evidence which would be sufficient to convict under the laws of the place where he sits. Hearsay evidence, for example, may be considered by a judge or United States Commissioner sitting as an extradition magistrate.").

(1983).

Finally, a fugitive is limited in their ability to contest the evidence supporting extradition. For example, an accused may submit only "explanatory evidence"; "contradictory evidence" is not permitted.  See Hoxha, 465 F.3d at 561 ("The range of evidence that a defendant may introduce as to probable cause at an extradition hearing is limited.  Courts have traditionally distinguished between inadmissible "contradictory evidence," which merely conflicts with the government's evidence, and admissible 'explanatory evidence,' which entirely eliminates probable cause.  In practice, this line is not easily drawn, but the rule serves the useful purpose of allowing the defendant 'to present reasonably clear cut proof ... of a limited scope [that has] some reasonable chance of negating a showing of probable cause,' while preventing the extradition proceedings from becoming a dress rehearsal for trial.").  Moreover, a fugitive may not (1) introduce evidence that merely conflicts with the evidence the requesting state has submitted, see Collins, 259 U.S. at 315-317; (2) cross-examine witnesses, see,e.g., Bingham, 241 U.S. at 517; Ordinola v. Hackman, 478 F. 3d 588, 608 (4th Cir. 2007); (3) attempt to establish an alibi, see Shapiro v. Ferrandina, 478 F.2d 894, 901 (2d Cir. 1971); or (4) seek to impeach the credibility of the requesting country's witnesses.  See Bovio v. United States, 989 F.2d 255, 259 (7th Cir. 1993); In re Singh, 124 F.R.D. 571, 573 (D.N.J. 1987) ("While the accused may produce evidence to explain matters, the court may exclude evidence which merely contradicts government testimony, poses conflicts of credibility or establishes a defense.").

**Analysis**

Having carefully considered the materials submitted, the Court concludes that the Government's proofs easily meet the limited threshold of probable cause and are sufficient to

support extradition.

The Government's application is supported by the charging documents submitted by Polish authorities, which includes a certified statement from Polish District Prosecutor Tadeusz Marek. Attached to Prosecutor Marek's submission is the RTDE, which is a lengthy summary of the facts and evidence against Czerech. The RTDE provides a thorough overview of the facts that support the offense charged. For instance, it contains a lengthy statement from Victim-1 in which she recounts the events surrounding the rape.[9] The RTDE further provides Victim-1's description of Czerech's actions during the rape and his tattoos – tattoos which appear on Czerech's body, as confirmed by the U.S. Marshals upon his arrest. (*See* Exs. 2-4.) The RTDE further contains statements from Milewski and Zakrewski which incriminate and identify Czerech as the second rapist of Victim-1. Specifically, Marek, who drove the car and witnessed some of the rape, and Zakrzewski who participated in the rape of Victim-1, identified Czerech as the second rapist.

Czerech attempts to raise several questions about the reliability of the Government's evidence. For example, he argues probable cause is lacking because the narrative statement of events is not sworn, the witnesses may have ulterior motives, and there is no (at least disclosed) forensic evidence, such as DNA.[10] He also questions whether Victim-1 could have identified

---

[9] During this Court's extradition hearing, there was some initial question as to whether it was Victim-1 or Friend-1 who provided much of the detail contained in the RTDE. The confusion apparently arose from the translation and organization of the document and redactions that the Government had made to the names of both women. Following discussion on the record, it was established that, in fact, Victim-1 provided the statement. (*See* Tr. 6:21-14:8.)

[10] Defendant challenges the reliability of the Government's proofs by criticizing the RTDE as insufficient, unsworn and not supported by affidavit. However, hearsay statements of

Czerech's tattoos because the incident occurred in the early morning hours and down a path

leading to a presumably dark forest. He also notes that Victim-1 apparently was not able to

identify Czerech from a passport photo taken around the same time as the alleged incident.

Probable cause is a relatively low standard requiring only "[a] reasonable ground for

belief in certain alleged facts." BLACK'S LAW DICTIONARY 1201 (6th ed. 1990).

Moreover, this Court's function is only to determine whether there is competent evidence to

justify holding the accused to await trial, and not to determine whether the evidence is sufficient

to justify a conviction. See generally Collins, 259 U.S. at 316.[11]  With that limited function in

mind, Czerech's contentions are insufficient to raise any serious doubts about the existence of

probable cause.  Prosecutor Marek's RTDE is a comprehensive recitation of allegations,

corroborated by statements of multiple witnesses, including the Victim and two of the men

involved in the incident, including one who participated in the rape.  To the extent Czerech

questions the veracity of these statements or the credibility of those making them, that is a matter

for the Court in Poland and exceeds the scope of this limited proceeding.  In re Singh, 124

F.R.D. at 573.  Finally, with respect to Czerech questioning the lighting and Victim-1's ability to

identify Czerech's tattoos, to the extent such an argument is even permissible and not an attack

---

witnesses summarized in the statement of a foreign official may be sufficient to support a finding
of probable cause in an extradition proceeding.  See, e.g., Simmons v. Braun, 627 F.2d 635, 636
(2d Cir. 1980); Afansajev v. Hurlburt, 418 F.3d 1159, 1162 (11th Cir. 2005); Bovio v. United
States, 989 F.2d 255, 259-61 (7th Cir. 1993); In re Extradition of Skaftouros, 643 F. Supp. 2d
535, 548 (S.D.N.Y. 2009); In re Ryan, 360 F. Supp. 270, 273 (E.D.N.Y. 1973).


[11] ("The function of the committing magistrate is to determine whether there is competent
evidence to justify holding the accused to await trial, and not to determine whether the evidence
is sufficient to justify a conviction.").

on the credibility of the Victim, the fact of the matter is Victim-1 *did* identify tattoos that are the same as those on Czerech's body.  Moreover, such an argument ignores that the allegations include a period of time where there was swimming in a reservoir, and a violent rape that occurred over 90 minutes that included grabbing the victim, placing her in close proximity to the assailant's tattooed arms, and forcing the victim to perform oral sex on him, which suggests her eyes were necessarily close to his abdomen.

Poland is not required to present its entire case in this country, nor is it appropriate for this Court to assess whether the evidence presented is sufficient to justify a conviction.  See Austin v. Healey, 5 F.3d 589, 605 (2d Cir. 1993) ("No doubt, the evidence tying Austin to the shooting of Wilson is circumstantial, and less than overwhelming. However, the foreign government is not required to present its entire case in this country. The evidence presented need only 'support a reasonable belief that [Austin] was guilty of the crime[s] charged.'"), cert. denied, 510 U.S. 1165 (1994).  Based on the totality of the circumstances presented here, and the Court's limited role in the context of this proceeding, the Court finds that the Government has established probable cause to sustain the charge.  See Bovio, 989 F.2d at 259-61.

**CONCLUSION**

For the reasons set forth above, the Government's request for the extradition of

Dariusz Adam Czerech to Poland is **GRANTED**.  This ruling will be certified to the Secretary of

State, together with a copy of all evidence received in this proceeding.


<u>s/Mark Falk</u>
**MARK FALK**
**United States Magistrate Judge**


**Dated:  February 6, 2020**